SPRINGFIELD NATIONAL BANK *vs.* JOHN T. JEFFERS.

Hampden.    September 24, 1928. — February 25, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Bills and Notes,* Holder in due course, Payment. *Estoppel. Agency,* Existence of relation. *Evidence,* Inference, Presumptions and burden of proof. *Practice, Civil,* Ordering verdict, Argument before Supreme Judicial Court.

This court disregarded a statement of fact, appearing in a brief presented to it at an argument, which did not appear to have a basis in the record before it.

A holder for value in due course of a negotiable promissory note is under no obligation to give notice to the maker that the note has been indorsed and transferred by the payee.

The maker of a negotiable promissory note, in making payment, is bound to see that he makes it to the holder of the note.

At the trial of an action by a bank as indorsee against the maker of a negotiable promissory note for $5,400 payable on demand to a warehouse corporation, containing provisions relative to warehouse receipts deposited with the payee as collateral security, there was evidence that the note on the day it was given to the payee had been by it indorsed and delivered with the collateral to the plaintiff to secure a loan by the plaintiff to it; that the course of business between the warehouse corporation and its customers was for that corporation to receive such notes secured by warehouse receipts for goods deposited with it and to receive payments on account of the notes from time to time as the customers withdrew goods covered by the warehouse receipts, and it was expected to indorse the amounts on the notes or, if full payment was made, to return the note to the maker; that from time to time it withdrew notes from the bank, indorsee, and substituted others, or made payments by its own check and requested indorsements of payments on specified notes or the return of specified notes; that the bank complied with such requests, but never made any examination of the customer's accounts or of the goods deposited or notified the customer of the assignments or indorsements to it; that the bank never received payments directly from a customer of the

corporation; that it knew the course of business pursued by the corporation; and that upon the note in question the plaintiff had made eleven indorsements showing payments of all but $450 of the face of the note. It was agreed that the defendant had paid the entire amount of the note and interest to the payee and that he knew nothing of the payee's transactions with the plaintiff. It appeared that the defendant, when he made payments and withdrew goods, had not asked to see the note or the security until he made the last payment and took the last of his goods, when he asked for the note; and that then the payee said the note would be sent him later, or made some similar reply. The judge, subject to exception by the defendant, denied a motion that a verdict be ordered for the defendant and granted a motion that a verdict for the balance of $450 be ordered for the plaintiff. *Held,* that

(1) The demand by the defendant of the warehouse corporation, when making the last payment to it, that the note be exhibited to him, not having been complied with, did not in itself give the defendant a right as a matter of law to rely on the payment as against the plaintiff, a holder in due course;

(2) It was proper to refuse to order a verdict for the defendant;

(3) The burden was on the defendant to establish the fact, relied on by him in defence, that the payee in its dealings with the defendant was acting as agent for the plaintiff;

(4) While the evidence did not establish, as a matter of law, that such defence was made out, a finding to that effect would not have been unwarranted;

(5) It was error to order the verdict for the plaintiff: the question, whether the defence that payments to the payee bound the plaintiff as payments to its agent, should have been submitted to the jury.

CONTRACT by an indorsee against the maker of the promissory note described in the opinion. Writ dated June 10, 1926.

In the Superior Court, the action was tried before *Burns*, J. Material evidence is described in the opinion. The judge denied a motion that a verdict be ordered for the defendant; and, by his order, a verdict was entered for the plaintiff in the sum of $470.48. The defendant alleged exceptions.

The case was submitted on briefs at the sitting of the court in September, 1928, and afterwards was submitted on briefs to *Crosby*, J.

*J. B. Ely & F. M. Kingsbury*, for the defendant.

*J. H. Jones, T. W. Ellis, & J. H. Mitchell*, for the plaintiff.

WAIT, J. The note sued upon in this action is practically

identical with that dealt with in *City National Bank* v. *Adams, ante,* page 239, decided this day. We, therefore, need not discuss whether it is rendered nonnegotiable by the provisions which it contains with regard to collateral security. It is negotiable. The material question here presented is whether the case should have been submitted to the jury on the issue of payment. The exceptions to the admission of evidence have not been argued and we treat them as waived.

There was evidence that the note was given for value on July 3, 1925, by the defendant, the maker, to the Eastern States Warehouse and Cold Storage Company, payable on demand to its order; and, on the same day, was indorsed by the warehouse company and delivered to the plaintiff. For many years the warehouse company had been a borrower from the plaintiff, to which it delivered, as collateral security for the company's notes, other notes of its customers made payable to its order at its place of business in Springfield. The company obtained these notes in a course of business by which it made loans to customers on deposit of goods in its warehouse; took their notes with a warehouse receipt for the goods as security; and, from time to time, as they withdrew goods, received payment, and was supposed to indorse the amounts on the notes or, if full payment was made, to return the note to the maker. It indorsed and delivered such notes with their collateral to the plaintiff as collateral for its indebtedness, taking from the bank a receipt for the notes and leaving with it a copy of the receipt. From time to time it withdrew notes and substituted others, or made payments by its own check, and requested indorsements of payments on specific notes or the return of specified notes. The plaintiff did as requested; and never made any examination of the customer's accounts or of the goods deposited. It knew the course of business pursued by the company. It never notified the customers of the assignments. It never received payments directly from a customer of the company. All payments to the bank were made by the company's check; but that check might be accompanied by requests for delivery of customers' notes or for indorsements to be made

upon them, totalling the amount of the check. Upon the note here in question, the bank, at the request of the company, made eleven indorsements of payments between October 17, 1925, and May 21, 1926, amounting to $4,950, which left an apparent balance of $450 still due. It was agreed that the maker had paid the entire amount of the note with interest to the company, but, if anything were due on the note, it was $450, with interest from May 21, 1926. The maker knew nothing of the company's transactions with the plaintiff, he was ignorant of the indorsement and delivery of his note, and the transfer of the warehouse certificate; he did not ask to see either as he took out the goods and made the necessary payments until, when he made the last payment and took the last of his goods, he asked for the note. The company then said it would send it to him later, or made some similar reply. We disregard the statement in the defendant's brief that the warehouse receipt delivered to the bank bore date August 3, and was numbered C.7473 although the note was dated July 3 and recited the number as 7473, because this does not appear in the bill of exceptions.

A holder for value in due course of a negotiable promissory note is under no obligation to give notice to the maker that the note has been indorsed and transferred by the payee. *Colorado Title & Trust Co.* v. *Childers*, 241 Fed. Rep. 631. *Skip* v. *Hook*, 2 Comyns, 562. *Reynolds* v. *Davies*, 1 B. & P. 625.

The maker, by the words of the note, has agreed to pay to the order of the payee; and, if he makes a payment, is bound to see that it is made to the holder of the note. *Wilbour* v. *Turner*, 5 Pick. 526. *Wheeler* v. *Guild*, 20 Pick. 545. *Murphy* v. *Barnard*, 162 Mass. 72, 79. *Connell* v. *Kaukauna*, 164 Wis. 471. In ordinary circumstances he can assure himself on this point only by seeing the note. See *Freeman* v. *Boynton*, 7 Mass. 483, 486. *Wyoming County Bank* v. *Nichols*, 101 West Va. 553. The law provides that the instrument must be exhibited to the person from whom payment is demanded and when it is paid must be delivered to the party paying it. G. L. c. 107, § 97. This, we think, must be taken to be common knowledge among merchants;

and when the note is not exhibited so that a partial payment may be indorsed upon it or that it may be destroyed if full payment is accepted, where money passes between maker and payee, an inference is justified that no payment on the note is intended; and a rule of law is warranted that evidence of that passing of money is not admissible against a holder subsequent to the payee. *Whittier* v. *Eager*, 1 Allen, 499. Nor do we think that a demand for exhibition of the note which is not complied with, however accounted for, enables the maker to introduce, against any holder in due course subsequent to the payee, evidence of payment of money to any one except the holder, or his agent, as proof of payment of the note. The provision of our statute that a negotiable instrument is discharged by any act which will discharge a simple contract for the payment of money (G. L. c. 107, § 142, cl. 4) has no application in such circumstances. *Union Trust Company* v. *McGinty*, 212 Mass. 205.

We see nothing in this evidence which proves payment as against the plaintiff, unless the warehouse company was authorized as its agent to accept payment. The plaintiff was not informed by the course of business whether the amounts which it indorsed came from the company or from its customers. It did not know what was received from the customer by the company. All that it knew was that it was asked to return a particular piece of collateral or to indorse an amount fixed by the company upon a note received from a customer. The money may or may not have come originally from that customer. In granting the request it was not dealing with the customer. The evidence is uncontradicted that the defendant customer knew nothing of the company's dealings with the plaintiff. There is no estoppel against the plaintiff through any representation to him on which he acted to his loss. No duty of notice to him rested on the plaintiff.

But if, in fact, the company was authorized to accept payment for the plaintiff, the defendant is entitled to the benefit of the payment, whether he knew or did not know of the agency. The burden of proving the agency rested on the defendant, *Clark* v. *Murphy*, 164 Mass. 490, as well as of

proving payment. ` Burnham* v. *Allen*, 1 Gray, 496.　*Hilton* v. *Smith*, 5 Gray, 400.　Unless, as matter of law, the evidence, taken most strongly for the defendant, would not sustain a finding that the agency existed, the defendant was entitled to have the question submitted to the jury.　The jurors could disbelieve the testimony that no express authority to accept payment for the bank has ever been given to the company. There was no evidence to prove such express authority; but we cannot say that the evidence of the long continued course of business between the company and the plaintiff, with no instance of further negotiation of the notes by the plaintiff, with the constant exchange in the collateral, with the knowledge of the practices of the company in its dealings with its customers, could not support an inference of implied authority to accept payment.　The judge could not properly have directed a verdict for the defendant.　The evidence does not establish, as matter of law, that an agency existed.　But, because it also fails to establish as matter of law that an agency did not exist, he was wrong in ruling that the plaintiff could recover; and in directing a verdict in favor of the plaintiff.

The exception to the refusal to direct a verdict for the defendant is overruled.　The exception to the direction of a verdict for the plaintiff is sustained.

*So ordered.*