FIRST NATIONAL BANK OF BRIDGEPORT *vs.* ROBERT GROVES.

Berkshire.    September 17, 1929. — November 25, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, WAIT, SANDERSON, & FIELD, JJ.

*Bills and Notes*, Holder in due course. *Practice, Civil*, Ordering verdict. *Witness*, Cross-examination. *Evidence*, Relevancy and materiality, Presumptions and burden of proof.

The record before this court, upon an exception by the defendant, saved at the trial of an action by a bank, the indorsee, against the maker of a negotiable collateral security note, to the ordering of a verdict for the plaintiff after the close of the plaintiff's evidence and the opening statement by the defendant's counsel to the jury, showed that in his answer the defendant among other defences averred that the note was delivered to the payee in an incomplete form with restricted authority as to its issuance, that such authority was exceeded in completing the instrument, and that it was negotiated to the plaintiff in fraud of the defendant, "all of which this plaintiff well knew." The record stated, as to the opening statement of the defendant's counsel to the jury, that it was "as to what the defence expects to prove." *Held*, that

(1) On the record there was nothing to indicate that the defendant in making the opening did not make a complete statement of all facts and inference of facts within his knowledge;

(2) In such circumstances it was within the province of the court to act on the plaintiff's motion.

At the trial of the action above described, it appeared that the defendant was a dealer in ferns, which from time to time he stored with the payee of the note, a storage warehouse corporation, and that he did not deal in butter; that he had borrowed money from the warehouse corporation from time to time for many years, using his warehouse receipts as collateral; that, upon his applying for a loan at about the date of the note in suit, the warehouse corporation had written him that he "had no notes signed up"; that he thereupon sent the note in its incomplete form, but never received any consideration for it; that the blanks in the note were filled in as showing that the defendant had deposited tubs of butter with the payee, and the note then was indorsed by the payee and delivered to a national bank which in turn delivered it with others to the plaintiff bank as collateral securing a note of the warehouse corporation to the plaintiff with a letter stating: "We have acted merely as depository and have never assumed responsibility for the goodness of the notes nor the existence of the collateral. By checking through the . . . [warehouse corporation], you can no doubt ascertain the status quo of the security"; and that the plaintiff never did the "checking through" suggested. The president of the

plaintiff bank testified that collateral for the warehouse corporation's note included "Customers' notes which in turn were secured by warehouse receipts showing deposited merchandise against which the advance was to be seventy-five per cent of the supposed market value of the merchandise. We left the arrangement of security with . . . [the treasurer of the warehouse corporation] or any person he designated . . . The whole matter of notes, warehouse receipts, values, substitutions and exchanges rested with . . . [him], or some person designated by him." *Held*, that

(1) It was within the discretion of the trial judge to exclude, in cross-examination by his own counsel of the defendant, who had been called as a witness by the plaintiff, a question, "Do you know where most of your notes were negotiated?" where there was no evidence nor offer of proof to show the relevancy of the question to any issue then before the court;

(2) Although the plaintiff was *prima facie* a holder of the note in due course, on the record a question was presented for the jury, whether the completion of the note and its negotiation were a fraud on the defendant;

(3) If the fact of such fraud at the inception of the note were proved, the burden would be upon the plaintiff to prove that it had acquired title to the note in good faith, for value, and that it had no notice of any defect in the title of the person negotiating it;

(4) It was not necessary on the present record to decide whether the evidence would warrant a finding that the treasurer of the warehouse corporation was the agent of the plaintiff as well as of the storage corporation when the notes of the defendant were deposited as collateral with the plaintiff, nor a ruling that his knowledge of the fraudulent issuance of the notes was imputable to the plaintiff;

(5) Taking all the facts disclosed by the evidence and all material facts offered to be proved in the opening for the defendant in their aspect most favorable to the contention that the plaintiff was a holder in due course, it could not be ruled as a matter of law that the plaintiff did not have knowledge of the infirmity of the note when delivered to it;

(6) The verdict should not have been ordered for the plaintiff.

CONTRACT upon two notes described in the opinion. Writ dated July 23, 1926.

In the Superior Court, the action was tried before *Burns*, J. Material evidence, the course of the trial and rulings by the trial judge are described in the opinion. By order of the judge, a verdict was entered for the plaintiff in the sum of $15,514.59. The defendant alleged exceptions.

The case was argued at the bar in September, 1929, before *Rugg*, C.J., *Pierce, Wait, Sanderson, & Field*, JJ., and afterwards was submitted on briefs to all the Justices.

*P. J. Ashe & E. K. McPeck*, for the defendant, submitted a brief.

*W. A. Heaphy*, for the plaintiff.

PIERCE, J.    This is an action of contract by an indorsee against the maker upon two promissory notes, dated June 25, 1925, and July 10, 1925, respectively, payable on demand to the Eastern States Warehouse and Cold Storage Company or order, and indorsed by the payee to the plaintiff. Each note contains a recital, in substance, that the maker has deposited with the payee as collateral security for the "payment of this or any other liability . . . due or to become due, direct or contingent now existing, or hereafter arising, the following property, viz: Eastern States Warehouse & Cold Storage Co's warehouse receipt No. — for . . . tubs butter —"; and each note contains an agreement of the maker "to deliver to the said Company additional securities, to its satisfaction, should the market value of the said securities, as a whole, suffer any decline, and also hereby gives to the said Company a lien for the amount of the said liabilities upon the property or securities given unto or left in the possession of the said Company by the undersigned [maker of the notes], and also upon any balance of the account of the undersigned [maker] with the said Company." The annexed agreements contain the provision that "On the non-performance of this promise, or upon the non-payment of any of the liabilities above mentioned, or upon the failure of the undersigned, forthwith, with or without notice to furnish satisfactory additional securities in case of decline, as aforesaid, or in the case of insolvency, bankruptcy, or failure in business of the undersigned, then and in any such case, this note and all other liabilities of the undersigned, shall forthwith become due and payable without demand or notice, and full power and authority are hereby given to said Company to sell, assign, and deliver the whole of the said securities, or any part thereof, or any substitutes therefor, or any additions thereto, or any other securities or property given unto or left in the possession of the said Company by the undersigned, for safe keeping or otherwise, at any brokers board,

or at public or private sale, at the option of the said Company or of its President or Treasurer, without either demand, advertisement or notice of any kind, which are hereby expressly waived. At any such sale the said Company may itself purchase the whole or any part of the property sold, free from any right of redemption on the part of the undersigned which is hereby waived and released. In case of sale for any cause, after deducting all costs or expenses of every kind for collection, sale or delivery, the said Company may apply the residue of the proceeds of the sale or sales so made, to pay one or more or all the said liabilities to the said Company, as it or its President or Treasurer shall deem proper, whether then due or not due, making proper rebate for interest on liabilities not then due, and returning the overplus, if any, to the undersigned, who agree to be and remain liable to the said Company for any deficiency arising upon such sale or sales." A copy of each note is annexed to the declaration and marked exhibit "A" or "B."

The answer of the defendant, in substance, is a general denial of the allegations of the writ and declaration, a denial of his signature without a demand of proof at the trial, G. L. c. 231, § 29, a denial that he was ever the owner or possessor of the tubs of butter referred to in the declaration, or ever owned, possessed or had issued to him warehouse receipts for butter by the Eastern States Warehouse and Cold Storage Company, and a special denial that he ever executed the instruments set forth in the plaintiff's declaration marked exhibit "A" and exhibit "B." The defendant further answered, in substance, that he did not on June 25, 1925, execute and deliver to the Eastern States Warehouse and Cold Storage Company the notes set forth in the declaration marked exhibit "A" and "B"; that said notes "were without consideration and were secured by false and fraudulent representation and were pledged by the payee to the plaintiffs herein as collateral security for the payment of the Eastern States Warehouse and Cold Storage Company notes"; that the notes declared on were "delivered to the payee under an agreement, restricting their issuance, and,

that the payee wholly disregarded said agreement, and, with intent to defraud, dated and wrote in the specific amounts, for which said notes are payable, and inserted in said note, Exhibit 'A', 413 tubs of butter, and in said note, Exhibit 'B', 308 tubs of butter, and negotiated said notes, and wrongfully, with intent to defraud this defendant, placed said notes in circulation, all of which this plaintiff well knew." The defendant's answer then recites alleged statements of fact, which are not here set out because they appear later in the testimony of the defendant.

The notes with the collateral agreements attached, saving a difference in parties, amounts of money promised to be paid, and property described in the warehouse receipts, are substantially identical with the notes sued upon in *City National Bank* v. *Adams*, 266 Mass. 239, and *Springfield National Bank* v. *Jeffers*, 266 Mass. 248. They are, therefore, under these decisions negotiable instruments, and the question for determination now presented is, Was the plaintiff a holder in due course for value without notice? During the trial the defendant saved exceptions to the refusal of the judge to receive certain evidence; so far as they are argued in the defendant's brief they will be considered herein later.

At the close of the plaintiff's evidence, the defendant made an opening statement to the jury "as to what the defence expects to prove in this case." Immediately thereafter the plaintiff filed and the judge allowed, subject to the defendant's exception, the following motion: "Now comes the plaintiff in the above entitled cause and moves that this Honorable Court direct that the jury return a verdict for the plaintiff in accordance with the declaration." On the record there is nothing to indicate that the defendant in making the opening did not make a complete statement of all facts and inference of facts within his knowledge. In these circumstances it was within the province of the court to act on the plaintiff's motion. *Hey* v. *Prime*, 197 Mass. 474. *Farnham* v. *Lenox Motor Car Co.* 229 Mass. 478, 482, and cases there collected. *Energy Electric Co. petitioner*, 262 Mass. 534, 538. Indeed the defendant makes

no contention in his brief as to the power of the court to act as here, in an appropriate case.

Regardful of the answer of the defendant, the plaintiff at the trial did not rest with the production of the notes and proof of the defendant's signature thereto, but called as witnesses the defendant and Edmund S. Wolfe, president of the plaintiff bank. The defendant, in direct examination, testified that he was a dealer in ferns; that for the last fifteen years he had stored his ferns with the Eastern States Warehouse and Cold Storage Company in their cold storage warehouse; that when he needed money for carrying on his fern business he was accustomed to borrow from the Eastern States Warehouse and Cold Storage Company and put up his warehouse receipts as collateral; that he "had been borrowing money from the warehouse company for the past fifteen years and the borrowing transactions averaged seven or eight a year"; that while he "was borrowing money from the warehouse company the warehouse receipts were never delivered to him but kept by the warehouse company as collateral for the defendant's notes given to it"; "that the same course of business was followed by the defendant and the warehouse company during 1925, during which year the defendant signed about eight notes totaling about $19,000"; "that in August, 1925, he desired to borrow some money from the Eastern States Warehouse Company, and in answer to his request to borrow on ferns he was storing, the company wrote him he had no notes signed up"; that in answer to this letter he signed three notes August 14, 1925, and sent them to the company; that "it is his signature on plaintiff's exhibits 1 and 2 [A and B], and that he never saw the exhibits 1 and 2 in their completed form, and never received any consideration for them." He further testified that during the month of August, 1925, he stored ferns with the warehouse company, signed the two notes in question for which no warehouse receipts were issued, and three other notes for which warehouse receipts were issued; that "after delivering the notes in their uncompleted form to Eastern States Warehouse Company, he did not see them again until a day or two before Novem-

ber 13, 1925, at which time they had been completed and negotiated into the hands of the plaintiff."

He further testified that he never stored any butter with the Eastern States Warehouse and Cold Storage Company and did not store any ferns with them in June and July, 1925; that he did not receive any warehouse receipts during said months of June and July; that notes "A" and "B" were signed in blank and forwarded by mail to the Eastern States Warehouse and Cold Storage Company August 14, 1925, and one other note was signed at the same time; that the plaintiff made demand on him for the payment of the notes in suit and that he had never paid them.

On cross-examination the defendant was asked, "Do you know where most of your notes were negotiated?" In reply to the question by the court "What difference does that make?" the attorney for the defendant replied, "It makes all the difference in the world . . . . If he was in the habit of negotiating his notes in the Chicopee National Bank he might have negotiated so many of them that they would have noticed that he was a fern dealer and not a butter dealer." In the absence of evidence or offer of proof to show the relevancy of the question to any issue then before the court, the admission of the evidence or not was within the discretion of the court. *Powers* v. *Boston & Maine Railroad*, 175 Mass. 466. *Boisvert* v. *Ward*, 199 Mass. 594. *Bresky* v. *Rosenberg*, 256 Mass. 66. It is to be noted that the record does not disclose that the defendant renewed his offer, if such evidence became material at a later time in the course of the trial. The defendant has not argued his other exceptions taken to the exclusion of his testimony and they are deemed to be waived.

Edmund S. Wolfe, president of the plaintiff bank, testified in substance that the notes in suit, exhibits "A" and "B," were sent to the plaintiff on October 5, 1925, by the Chicopee National Bank, which was the first time the plaintiff had seen or known of the notes; that they were contained in a letter dated October 5, 1925, from the assistant cashier of the Chicopee bank, which reads: "We originally had in our files for your account and risk notes

of . . . [here follows an enumeration of thirty notes] for which in some case, substitution of other notes have been made according to the general practice. As we have decided to discontinue acting as depository for the notes and collateral, we are enclosing to you herewith . . . [Here follows an enumeration of forty-three notes] Which represent either the original notes or the notes which have been substituted by the Eastern States Warehouse & Cold Storage Company. We have acted merely as depository and have never assumed responsibility for the goodness of the notes nor the existence of the collateral. By checking through the Eastern States Warehouse & Cold Storage Company, you can no doubt ascertain the status quo of the security. Will you kindly return the original receipt or receipts which you are holding direct to us . . . . P. S. — Notes of David L. Bachman #6605, Robert Groves #7142, #7143, included in the above list have been received as substitutes. The Warehouse Receipts will be forwarded when received or you can obtain direct from the Company." The plaintiff never checked through to "ascertain the status quo of the security" as suggested in the above letter.

In cross-examination Wolfe, in substance, testified that the notes of Groves came into possession of the plaintiff on October 5, 1925, as an exchange of collateral; that the note to which they were collateral was dated July 8, 1925, and that this note was secured by collateral other than the Groves notes; that the Groves notes were not among the collateral of July 8, but became collateral in substitution of collateral; that the collateral was exchanged by the Chicopee National Bank with the assent of the plaintiff; that the Groves notes called for warehouse receipts as collateral; that the plaintiff's president with the receipt of the Groves notes neither received nor saw warehouse receipts; that he inquired orally for them and the Chicopee National Bank "in their letter itself [supra] . . . said the warehouse receipts could be secured from the Eastern States Warehouse Company or they would deliver them to us when they got them"; that the notes were sent to

the plaintiff and received from the Chicopee National
Bank. In answer to the question "did you consider those
notes without the warehouse receipts good collateral?" the
witness answered, "We relied on the Chicopee National
Bank to complete the value by supplying the warehouse
receipts."

The witness further testified, in substance, that the
plaintiff had very extensive relations with the Eastern
States Warehouse and Cold Storage Company and that the
business on the part of the plaintiff bank was handled by
him; that on July 8, 1925, the Eastern States Warehouse
and Cold Storage Company gave the plaintiff a note for
$25,000 secured by collateral. A copy of this note and a
copy of the agreement relating to the collateral security
for the payment of it appear in the record. Prior to October
5, 1925, the plaintiff had no knowledge of the existence of
the Groves notes or warehouse receipts, and had no agree-
ment of any kind with the Chicopee National Bank other
than that it assented to the arrangement of depositing the
notes and warehouse receipts with the Chicopee National
Bank. On July 8, 1925, the Chicopee National Bank cer-
tified to the plaintiff that it held for the account of the
plaintiff certain notes, which are enumerated in the record,
"secured by warehouse receipts for goods stored in the
Eastern States Warehouse & Cold Storage Company's
warehouses," with the statement and proviso that "These
notes and collateral security are held for your account and
risk, as collateral to a note of the Eastern States Ware-
house & Cold Storage Company, numbered –90–, dated
July 8th, 1925, due November 8th, 1925, amount $25,-
000.00, with the understanding that we may exchange same
from time to time for other notes and warehouse receipts,
provided that such notes at all times aggregate in face
value the amount of said note of the Eastern States Ware-
house & Cold Storage Company." It appeared in evidence
that one Mahoney, the treasurer of the Eastern States
Warehouse and Cold Storage Company, at some time before
July 8, 1925, "told the plaintiff bank that the Chicopee
National Bank was acting as trustee for one-half dozen

bank loans made by the Eastern States Warehouse, where collateral was deposited with power of substitution and exchange and the plaintiff bank had no objection to the arrangement. When the plaintiff bank loaned money to the Eastern States Warehouse Company it sent the money through to the Chicopee National Bank or one of their correspondents as directed."

In response to the question, "Did you consider those notes [Groves] without the warehouse receipts good collateral," the witness (Wolfe) answered that in those loans he relied on both the maker of the notes and the security, that they were not lending to the particular maker (Groves) but to the Eastern States Warehouse and Cold Storage Company. In answer to the question, "Now what collateral was given to secure this loan?" the witness said "Customers' notes which in turn were secured by warehouse receipts showing deposited merchandise against which the advance was to be seventy-five per cent of the supposed market value of the merchandise. We left the arrangement of security with Mr. Mahoney, treasurer of the Eastern States Warehouse and Cold Storage Company or any person he designated. . . . if a customer came in, who had borrowed money and given a note and put up a warehouse receipt and he wanted to take his merchandise and pay the amount of his note, which he would have to do in order to obtain his merchandise, he could do so, and, that the Eastern States Warehouse and Cold Storage Company could exchange or put up other collateral and take up that particular warehouse receipt and that particular note out of the collateral previously deposited." He further testified that "prior to October 5, 1925, the bank never had in its possession at Bridgeport any of the customers' notes nor the Groves notes; that the Groves notes have never been paid. The plaintiff had no knowledge concerning them except as contained in the certificates of the Chicopee National Bank. . . . The note of $25,000 dated July 8, 1925, was a direct obligation of the Eastern States Warehouse and Cold Storage Company, secured by collateral notes of the customers, which collateral notes were in turn secured

by warehouse receipts of the Warehouse Company. No warehouse receipts, called for in the Groves notes, were ever in the possession of the Chicopee National Bank or the plaintiff. The customers' notes and warehouse receipts were kept at the Chicopee National Bank, . . . This was for the further convenience of the customers of the Warehouse Company in order that, in a practical manner, they might get the receipt released when they wanted to release the goods on deposit and that payment might be indorsed on that note." Mahoney "was the man who chose, the depository." Wolfe's reliance was upon the certificates which the Chicopee National Bank sent him. He made an arrangement with Mahoney to give the Eastern States Warehouse and Cold Storage Company "a line of credit to be secured by the notes and warehouse receipts of its customers, the loans not to exceed a sum in excess of seventy-five per cent of the value of the merchandise represented by the warehouse receipts; Mr. Mahoney, or some person designated by him, to determine the value of the collateral and of the warehouse receipts deposited. The Chicopee National Bank acted merely as depository and had no discretion as to the determination of value represented by notes and warehouse receipts, nor judgment or discretion as to the selection as to what notes and warehouse receipts were to be deposited. The whole matter of notes, warehouse receipts, values, substitutions and exchanges rested with Janina Mahoney, or some person designated by him."

Wolfe testified on cross-examination: "I don't know whether the notes (Groves's) are good without the warehouse receipts," and was asked by defendant's counsel, "It threw you off your guard . . . when you saw the notes without the warehouse receipts?" The question was excluded rightly. The notes came to the plaintiff as substitute collateral, and there was nothing in the evidence to warrant a finding that on October 5, 1925, he knew or had reason to suppose that in fact the Groves notes were not secured by warehouse receipts which the Eastern States Warehouse and Cold Storage Company had not delivered to the depository with the notes.

The defendant's opening presents no issues of fact which were not before the court on the direct and cross-examination of the defendant and the witness Wolfe. It is not contended in the brief of the defendant that the Groves notes were not complete in form when delivered to the plaintiff; nor is it therein contended that the plaintiff did not give value for and receive the notes within a reasonable time after date. The plaintiff was *prima facie* a holder in due course. G. L. c. 107, §§ 74–82. The defendant, however, on the facts disclosed by the evidence and on all material facts offered to be proved in the opening for the defendant, had the right to show that the notes in suit were delivered to the Eastern States Warehouse and Cold Storage Company in an incomplete condition for the purpose of borrowing money of the payee as soon as the defendant had ferns stored with the payee and it had issued to the defendant warehouse receipts therefor; *Lewiston Trust & Safe Deposit Co.* v. *Shackford*, 213 Mass. 432; and, establishing such facts, it had the right to show that, contrary to an implied condition which attached to the delivery of the incomplete notes, the payee filled out the body of the notes and negotiated them without the loan of money to the defendant and before there was any storage of ferns or an issuance of warehouse receipts to be held by the payee as collateral for the loans made to the defendant on account of stored ferns. It is plain the jury properly could find on the above evidence that the completion of the notes and their negotiation were a fraud of the payee. If the fact of fraud at the inception of the notes were proved, the burden would be upon the plaintiff to prove that it had acquired title to the notes in good faith, for value, and that it had no notice of any defect in the title of the person negotiating them. G. L. c. 107, §§ 75, 82. *Merchants' National Bank of Lowell* v. *Haverhill Iron Works*, 159 Mass. 158, 160. *Dodge* v. *Bowen*, 264 Mass. 208, 214.

It is not necessary at this time to decide whether the evidence would warrant a finding that Mahoney, the treasurer of the Eastern States Warehouse and Cold Storage Company, was the agent of the plaintiff as well as of the

storage company when the notes of the defendant were deposited as collateral with the plaintiff, nor a ruling that his knowledge of the fraudulent issuance of the notes was imputable to the plaintiff. Taking all the facts disclosed by the evidence and all material facts offered to be proved in the opening for the defendant, in their aspect most favorable to the contention that the plaintiff was a holder in due course, it could not be ruled that the plaintiff did not have knowledge of the infirmity of the notes when delivered to it. It results that the plaintiff was not entitled to have a verdict directed in its favor and that the exceptions of the defendant must be sustained.

*Exceptions sustained.*