RITA COONCE *vs.* CARL COONCE.

Suffolk. December 3, 1969. — February 3, 1970.

Present: SPALDING, CUTTER, KIRK, SPIEGEL, & QUIRICO, JJ.

*Divorce,* Entry fee, Proceeding in forma pauperis. *Needy Person. Probate Court,* Appeal, Waiver of fees, Proceeding in forma pauperis. *Evidence,* Presumptions and burden of proof, Affidavit.

A libellant moving in a Probate Court for leave to file her divorce libel without payment of the statutory filing fee had the burden of proving that her economic condition was such that she was entitled to proceed in forma pauperis. [692]

An affidavit filed in support of a motion is not conclusive of the facts alleged therein even if no counter affidavit is presented. [692]

This court, upon appeal from an order of a Probate Court denying a motion, was precluded from considering material set forth in the appellant's brief which was not shown by the record to have been offered at the hearing on the motion in the Probate Court. [692–693]

---

Allegations in an affidavit filed by a libellant in a Probate Court, in support of a motion "for leave to proceed in Forma Pauperis to file her divorce . . . [libel] without the payment" of the statutory fifteen dollar filing fee, that she was the mother of five children ranging in age from one to eight years, that she was receiving Aid for Families with Dependant Children in the amount of $158.15 every two weeks, and that she was unable to pay the filing fee without depriving her children of necessities, did not set forth facts entitling her to a waiver of payment of the filing fee. [693]

A Probate Court, upon a petition by a libellant "for leave to proceed in Forma Pauperis to file her divorce . . . [libel] without the payment" of the statutory fee, had power to waive the fee under G. L. c. 208, § 33, since in forma pauperis proceedings were "according to the course of proceedings in ecclesiastical courts or in courts of equity" in the period from about Magna Carta to the independence of the United States. [694–695]

MOTION filed in the Probate Court for the county of Suffolk on March 18, 1969, and heard by *Wilson*, J.

*Paula W. Gold (Richard A. Seid* with her) for the libellant.

QUIRICO, J. This is an appeal by the libellant in a divorce proceeding from an order of the Probate Court denying her motion "for leave to proceed in Forma Pauperis to file her divorce petition without the payment of a fifteen dollar filing fee." The motion was accompanied by an affidavit of the libellant alleging that: she is the wife of Carl Coonce, she is the mother of five children ranging in age from one to eight years, she is receiving Aid for Families with Dependent Children (AFDC) in the amount of $158.15 every two weeks, she desires a divorce from Carl Coonce as she and her children have suffered constant physical abuse, and she is unable to pay the $15 filing fee without depriving her children of necessities.

The libellant argued her motion on the affidavit only, and presented no evidence of the allegations therein. The libellant seasonably appealed from the denial of her motion and requested a report of material facts. G. L. c. 215, §§ 9 and 11. The judge's report states the motion, the affidavit, and the proceedings thereon. It then continues: "General Laws, Chapter 262, Section 40, makes no provision for waiver by the Probate Court of specific fees therein listed. Under the provisions of General Laws, Chapter 262,

Section 4, the petitioner by appropriate proceeding brought in the Superior Court could request a waiver of filing fee if 'destitute and unable to pay.' There is no evidence but that the petitioner's husband on proper motion might be required by the Court under the provisions of General Laws, Chapter 208, Section 17, to pay into Court for the use of the wife an amount to enable her to maintain the proposed libel. As the recipient of non-taxable support payments at the rate of $79 weekly, together with free medical expenses, the Court finds the petitioner not 'destitute.' Funds have been made available to certain litigants by the Federal Government providing not only free legal service but also cash expenses incident to the so-called Legal Assistance Project."

The libellant has the burden of proving that her economic condition is such that she is entitled to proceed in forma pauperis. The trial judge found against her on this factual issue. All he had before him on this issue was the libellant's affidavit which he was not required or compelled to believe. Affidavits are not conclusive of the facts alleged even if, as in this case, no counter affidavits are presented. *Trade Mut. Liab. Ins. Co.* v. *Peters,* 291 Mass. 79, 85. *Mercadante* v. *Aldorasi,* 295 Mass. 596, 597. *Germain* v. *Raad,* 297 Mass. 73, 75.

The libellant suggests that since her indigence has already been determined by the authorities who found her eligible to receive AFDC and also by the persons who found her eligible to be an "OEO [Office of Economic Opportunity] legal services client" she is automatically eligible to proceed in forma pauperis. There is nothing in the record to show the bases or standards upon which those decisions of eligibility are required to be made. They do not control the decision of the court on the factual issue involved in the libellant's motion.

In making his decision on this factual issue, the trial judge properly considered only the very limited material presented to him, viz., the motion and the affidavit. A large part of the libellant's brief is devoted to quotations of non-judicial opinions of various persons, and from reports of

various surveys or social studies conducted to determine the effect of the poverty or affluence of litigants on the quality of justice they obtained. The brief is critical of the trial judge for not considering such material in arriving at his decision. Assuming the material to be relevant to the issues of the case, and to be otherwise admissible as evidence, the record does not show that it was ever offered at the hearing. "[T]his court, upon appeal, is precluded from considering matters that do not appear from the record to have been before the trial court. To hold otherwise would amount to an utter disregard of the fundamental principles underlying the rights of parties upon appeal. . . . This practice is adhered to whether the matters sought to be presented and not in the record are in the form of exhibits or of other documents . . . or whether they are set forth in briefs." *Gorey* v. *Guarente*, 303 Mass. 569, 570–571. *Hale* v. *Blanchard*, 242 Mass. 262, 264–265. *Springfield Natl. Bank* v. *Jeffers*, 266 Mass. 248, 251. *Nelson* v. *Belmont*, 274 Mass. 35, 45. *Carilli* v. *Hersey*, 299 Mass. 139, 145.

We have before us the same documents which the trial judge had before him on the factual issue raised by the motion. We therefore stand where the trial judge stood and consider the same question unaffected by his decision. *Berry* v. *Kyes*, 304 Mass. 56, 57. *Veazie* v. *Staples*, 309 Mass. 123, 127. *Pitman* v. *Pitman*, 314 Mass. 465, 475. Considering the factual issue on the basis of the motion and affidavit only, and disregarding matters sought to be placed before us by the libellant in her brief, we decide that she has not proved the existence of facts entitling her to a waiver of payment of the statutory filing fee for her divorce libel.

The libellant's failure to sustain her burden of proof on the sole factual issue raised by her motion renders inapplicable her contentions that she has been deprived of her rights under various provisions of the Constitutions of the United States and of this Commonwealth. We therefore do not deal with them.

What we have said above is sufficient to dispose of this appeal. However, because of the trial judge's reference to

the statutes regulating entry fees for divorce libels, we think it desirable to discuss the power of the Probate Court to waive the payment of such fees. We recognize that G. L. c. 262, § 4, as amended by St. 1954, c. 582, expressly authorizes the Superior Court to waive the payment of such fee, and that G. L. c. 262, § 40, relating to the Probate Court contains no such provision. It is our opinion that despite the statutory difference the Probate Court has the power to grant such a waiver in an appropriate case. The power is derived from G. L. c. 208, § 33, which provides that "[t]he court may, if the course of proceeding is not specially prescribed, hear and determine all matters coming within the purview of this chapter according to the course of proceedings in ecclesiastical courts or in courts of equity." This language has appeared in our statutes since at least 1836. See Rev. Sts. c. 76, § 38. In *Kelley* v. *Kelley*, 161 Mass. 111, 120, the court explained an earlier decision[1] awarding costs in a divorce case by quoting this statute as the authority for doing so in the absence of any express provision therefor. In *Friedrich* v. *Friedrich*, 230 Mass. 59, 61, the court held that a nonresident libellee who appeared and submitted himself to the jurisdiction of this Commonwealth in answering the libel against him could file a cross libel and obtain a divorce, even in the absence of express statutory authority therefor, because that was the procedure in courts of equity which the statute quoted above (c. 208, § 33) made applicable to divorce cases. See also *Drew* v. *Drew*, 250 Mass. 41, 43; *Wight* v. *Wight*, 272 Mass. 154, 155; *MacLennan* v. *MacLennan*, 311 Mass. 709, 712; *Watts* v. *Watts*, 312 Mass. 442, 445. Thus, notwithstanding the absence of any express provision in c. 208 for proceedings in forma pauperis, the Probate Court has authority under § 33 to permit them if they were "according to the course of proceedings in ecclesiastical courts or in courts of equity."

The answer to this question requires us to consider judicial proceedings in the period from about Magna Carta

---

[1] *Stevens* v. *Stevens*, 1 Met. 279.

in 1215 to the independence of the United States in 1776. Detailed records of the proceedings in those centuries are either not available or not readily accessible. There is, however, sufficient reliable information to enable us to conclude with reasonable certainty that in forma pauperis proceedings were then recognized, allowed and used in the course of proceedings in ecclesiastical courts and in courts of equity. This information is available to us as the result of the research and writings of a number of eminent legal scholars, some of whom lived and practised in the period involved in our search. A reference to a few of these writings is sufficient for the present purpose.[2] There is, of course, ample evidence that in forma pauperis proceedings were permitted in the common law courts.[3]

The order of the Probate Court denying the libellant's motion for leave to proceed in forma pauperis to file her divorce petition without the payment of the statutory filing fee is affirmed.

*So ordered.*

---

[2] (a) Maguire, Poverty and Civil Litigation, 36 Harv. L. Rev. 361, includes a comprehensive discussion of the availability of in forma pauperis proceedings in the English courts over many centuries. He says (at page 365): "The ecclesiastical courts also worked out an *in forma pauperis* procedure not later than the end of the thirteenth century. By Oughton's time (1738) this procedure and the procedure in the common law courts were running along closely parallel lines."

(b) 1 Oughton, Ordo Judiciorum, 23 and 49, discusses the procedure by which one could be permitted to sue as a pauper, and have counsel assigned to represent him, in proceedings in ecclesiastical courts.

(c) *Richardson* v. *Richardson*, [1895] P. 276, 277, quotes from Oughton with approval as applicable to divorce cases. It says further that "A person who is permitted to sue in the Divorce Court in formâ pauperis is exempted from the payment of Court fees. . . . 'To sue as a pauper is a great privilege of law, it belongs only to the necessity arising from absolute poverty, and from the absence of any other mode of obtaining justice; no person is entitled to the gratuitous labours of others who can furnish the means of providing them for himself.'"

[3] (a) 3 Blackstone, Commentaries, 400, says that ". . . paupers, that is such as will swear themselves not worth five pounds, are, by . . . [St. 11 Henry VII, c. 12 (1495)] to have original writs and *subpoenas gratis*, and counsel and attorney assigned them without fee; and are excused from paying costs, when plaintiffs, by statute [of 1532] . . . ."

(b) 1 Pollack and Maitland, History of English Law (2d ed.) 195, says, in speaking of the law as it was before 1272, "[t]hat the poor should have their writs for nothing, was an accepted maxim."