Richard N. **BISTANY** and Marjorie J. **Bistany,** Plaintiffs,

v.

**PNC BANK, NA, Defendant.**

**Civil Action No. 06–11326–NMG.**

United States District Court, D. Massachusetts.

Nov. 7, 2008.

Kristin Cataldo, T. Christopher Donnelly, Donnelly, Conroy & Gelhaar, LLP, Boston, MA, Defendant.

John J. Ford, Neighborhood Legal Services, Inc., Lynn, MA, Kenneth D. Quat, Quat Law Offices, Cambridge, MA, for Plaintiff.

## MEMORANDUM & ORDER

GORTON, District Judge.

The plaintiffs in this case, Richard and Marjorie Bistany ("the Bistanys"), are senior citizens living in Peabody, Massachusetts. They have had a banking relationship with a predecessor in interest to the defendant, PNC Bank, NA ("PNC"), but they allege that PNC has been pursuing them for payments under a loan agreement they never entered. The plaintiffs allege that the bank forged their signatures on the documents constituting the home equity loan in question.

The instant litigation arises out of the parties' attempts to settle their dispute. PNC seeks to enforce a settlement agreement which the Bistanys claim they never ratified. Coincidentally, their attorney seeks to enforce a lien against that settlement which the Bistanys oppose.

### I. *Background*

#### A. The Settlement Agreement

The parties attempted to mediate their dispute in June, 2008. Although that mediation was unsuccessful, the parties resumed settlement negotiations the following week. The Bistanys authorized their lawyer, Kenneth D. Quat ("Atty. Quat"), to propose a certain settlement agreement to counsel for PNC, Kristin M. Cataldo ("Atty. Cataldo"). After Atty. Cataldo responded with a counter-proposal, Atty. Quat sent an email to her stating, "We have a deal. Please draft a settlement agreement for our review." Accordingly, Atty. Cataldo drafted a settlement agreement which was forwarded to the plaintiffs.

In a letter dated August 19, 2008, however, Richard Bistany ("Mr. Bistany") informed Atty. Cataldo that he had fired Atty. Quat for "not follow[ing] my instructions". Mr. Bistany further stated that he was "not happy" with parts of the settlement agreement as drafted and that "[i]f you [Atty. Cataldo] are interested in speaking with me to get this matter resolved I would look forward to hearing from you at some point". On September 5, 2008, PNC moved to enforce that settlement agreement. The Bistanys, now proceeding *pro se*, have opposed that motion by filing a "motion to rescind findings on proposal in question".

#### B. The Attorney's Lien

In June, 2008, the Bistanys allegedly agreed to pay $10,000 in legal fees and costs out of the amount they were to receive from the settlement. At the end of August, 2008, Atty. Quat, along with his co-counsel, John J. Ford ("Atty. Ford"), moved to withdraw as counsel for the plaintiffs, stating that

> recent developments have rendered [the attorneys] unable to continue providing effective legal representation to plaintiffs, and plaintiffs have requested that they withdraw as their counsel.

Two days before this Court allowed the attorney's motion for leave to withdraw, Atty. Quat filed a notice of attorney's lien

pursuant to M.G.L. c. 221, § 50 in the amount of $10,000 against any judgment or settlement in favor of the plaintiffs. Atty. Quat moved to enforce his lien on September 24, 2008, and the plaintiffs moved to vacate that lien shortly thereafter.

## C. Other Pending Motions Filed by the Plaintiffs

In connection with this litigation, the Bistanys have also filed the following motions:

1) "motion to vacate decision for a new attorney" seeking leave to proceed *pro se*;

2) two motions to "vacate" the affidavits of Attys. Quat and Ford;

3) motion to submit photos for discovery;

4) motion to submit an amended complaint against PNC for $1 million, which PNC has opposed; and

5) motion to "vacate" PNC's opposition to submit an amended complaint.

## II. *Legal Analysis*

### A. Motion to Enforce Settlement Agreement

#### 1. Legal Standard

■ Policy favors the enforcement of settlement agreements so as to hold people to the contracts they make and to avoid costly and time-consuming litigation. *T & T Mfg. Co. v. A.T. Cross Co.*, 587 F.2d 533, 538 (1st Cir.1978); *Flebotte v. Dow Jones & Co., Inc.*, No. 97–30117, 2001 WL 35988082, at *2 (D.Mass.2001); *Hamilton v. Sch. Comm. of City of Boston*, 725 F.Supp. 641, 645 (D.Mass.1989). An enforceable settlement agreement arises in Massachusetts when all of the parties to be bound mutually assent to all material terms, even if those terms are not memorialized in a final writing. *See Flebotte*, 2001 WL 35988082, at *3; *Rosenfield v. U.S.*

*Trust Co.*, 290 Mass. 210, 195 N.E. 323, 325 (1935); *Basis Tech. Corp. v. Amazon.com, Inc.*, 71 Mass.App.Ct. 29, 878 N.E.2d 952, 961 (2008).

■ A settlement agreement is not enforceable, however, if "material facts are in dispute as to the validity or terms of the agreement". *Bandera v. City of Quincy*, 344 F.3d 47, 52 (Mass.2003). One instance in which the validity of a settlement agreement may be challenged occurs when an agreement is the product of coercion. *Willett v. Herrick*, 258 Mass. 585, 155 N.E. 589, 596 (1927). Another such instance occurs when "the authority of an attorney to enter into a settlement agreement on behalf of his client is in dispute." *In re the Petition of Mal de Mer Fisheries, Inc.*, 884 F.Supp. 635, 638 (D.Mass.1995).

■ In resolving a dispute with respect to authority, the Court is mindful that an attorney does not have inherent authority to settle on behalf of his client because "the decision to settle litigation belongs to the client". *Malave v. Carney Hosp.*, 170 F.3d 217, 221 (1st Cir.1999); *see also Quint v. A.E. Staley Mfg. Co.*, 246 F.3d 11, 13–15 (1st Cir.2001). If, however, an attorney has apparent authority to settle on behalf of his client, the client is bound by the resulting settlement agreement. *See LTX Corp. v. Daewoo Corp.*, 979 F.Supp. 51, 56 (D.Mass.1997). Apparent authority

> results from conduct by the principal which causes a third person reasonably to believe that a particular person . . . has authority to enter into negotiations or to make representations as his agent.

*Hudson v. Mass. Property Ins. Underwriting Ass'n*, 386 Mass. 450, 436 N.E.2d 155, 159 (1982) (citations omitted). When an attorney settles a case on behalf of his client with apparent but not actual authority, the client's recourse is a suit for legal

malpractice, not avoidance of the settlement agreement. *See In re the Petition of Mal de Mer Fisheries, Inc.*, 884 F.Supp. at 640, citing *Petty v. Timken Corp.*, 849 F.2d 130, 133 (4th Cir.1988).

## 2. Application

■ This Court finds that counsel for both parties in this case assented to the material terms of the settlement agreement. After some preliminary negotiation, Atty. Cataldo sent a written proposed settlement to Atty. Quat who, in turn, accepted that offer by his email response, "We have a deal."

On that account, PNC argues that this Court should enforce the settlement agreement. The Bistanys respond that a settlement agreement is unenforceable until both parties have signed it. That is an ineffective argument where, as here, the parties (or those acting on their behalf) have agreed to all material terms. *See Flebotte*, 2001 WL 35988082, at *3.

■ The Bistanys also contend that Atty. Quat "coerced" them into agreeing to settle. In their opposition to his motion to enforce his lien, the Bistanys state that Atty. Quat threatened to withdraw as their attorney if they did not sign the initial settlement proposal he sent to Atty. Cataldo. As explained below, that argument is without merit.

As an initial matter, the Bistanys bear the burden of proving duress, *Cabot Corp. v. AVX Corp.*, 448 Mass. 629, 863 N.E.2d 503, 512 (2007), and they have not done so. They have produced no evidence in support of their allegation that Atty. Quat threatened to withdraw in order to force them to agree to the settlement. Furthermore, this Court concurs with consistent case law that such threats do not constitute duress. *See Macktal v. Sec'y of Labor*, 923 F.2d 1150, 1157 (5th Cir.1991) (finding no abuse of discretion where a

settlement was enforced despite the plaintiff's allegations that his attorney threatened to withdraw from representation and charge him $12,000 in fees if he did not consent to the settlement); *King v. Bishop*, 879 S.W.2d 222, 224 (Tex.App.1994) (affirming the enforcement of a settlement despite plaintiffs' allegations of duress exerted by their attorney).

■ Upholding a settlement under such circumstances is warranted because, in general, duress must emanate from the opposing party to an agreement, not one's own attorney, unless the opposing party knows of the duress. *See DeLuca v. Bear Stearns & Co.*, 175 F.Supp.2d 102, 114 (D.Mass.2001) ("[T]o avoid a contract on the basis of duress, a party must show that the conduct *by the other party* caused her to enter into the contract".) (citation omitted) (emphasis added); *Kozera v. Westchester Fairfield Chapter of Nat. Elec. Contractors Ass'n, Inc.*, 714 F.Supp. 644, 651 (S.D.N.Y.1989), *rev'd in part, vacated in part on other grounds*, 909 F.2d 48 (2d Cir.1990); *Lombard v. Lufkin*, 278 Mass. 263, 179 N.E. 632, 632 (1932) (stating that duress exerted by the defendant's attorney on the defendant "without the plaintiff's knowledge, consent, or ratification could not affect his rights"); *Fairbanks v. Snow*, 145 Mass. 153, 13 N.E. 596, 597 (1887) (stating that "the defense of duress is like other defenses of fraud, and cannot be set up against an innocent holder"); *see also* Restatement (Second) of Contracts § 175(2). Therefore, this Court finds that the defense of duress is unavailable to the Bistanys.

The Bistanys further argue that the settlement agreement is unenforceable because they did not authorize Atty. Quat to enter into it. There is insufficient evidence to determine whether the Bistanys gave Atty. Quat actual authority to settle

but the Court does not need to decide that issue because Atty. Quat had apparent authority to enter into the settlement agreement on behalf of the Bistanys.

When Atty. Quat conveyed the settlement proposal to PNC in June, 2008, he explicitly stated, "The Bistanys have authorized me to convey to PNC the [proposal]". When PNC responded with a counter-proposal, Atty. Quat accepted it on behalf of the Bistanys. It was reasonable for PNC 1) to take Atty. Quat at his word when he said that he had authority to make the offer and 2) to assume that his authority extended to the next (and final) round of settlement negotiations. Therefore, Atty. Quat had apparent authority that bound the Bistanys to the final settlement agreement which will be enforced. *See Hudson,* 436 N.E.2d at 159. If the Bistanys can prove that their attorney lacked authority, their remedy is a suit for legal malpractice. *See In re the Petition of Mal de Mer Fisheries, Inc.,* 884 F.Supp. at 640, citing *Petty,* 849 F.2d 130, 133 (4th Cir.1988).

## B. Motion to Enforce Attorney's Lien

 In Massachusetts, M.G.L. c. 221, § 50 enables attorneys to assert a "charging lien" in order to secure compensation for their services. A lien pursuant to § 50 may survive the withdrawal of counsel, even if the attorney is not handling the case when the client obtains any recompense so long as the withdrawal was not "wholly voluntary". *Phelps Steel, Inc. v. Von Deak,* 24 Mass.App.Ct. 592, 511 N.E.2d 42, 44 (1987) (citation omitted). Withdrawal is not wholly voluntary and the attorney's lien remains intact if there was

a breakdown in the lawyer-client relationship, illness of the lawyer, or development of an unforeseen, and

reasonably not foreseeable, conflict of interest....

*Id.* Here, it is evident that Atty. Quat's withdrawal was not wholly voluntary: the Bistanys requested that he withdraw, stated that they were unhappy with the settlement he had negotiated and indicated that he had failed to follow their instructions.

 To enforce a lien, "a substantive contractual or quantum meruit basis to recover fees from the client" must first be established. *Boswell v. Zephyr Lines, Inc.,* 414 Mass. 241, 606 N.E.2d 1336, 1342 (1993); *see also Elbaum v. Sullivan,* 344 Mass. 662, 183 N.E.2d 712, 714 (1962). The burden of proof rests on the attorney to prove that such a contract existed. *First Nat. Bank of Boston v. Brink,* 372 Mass. 257, 361 N.E.2d 406, 410 (1977). To satisfy this burden, the attorney must provide "more than purely speculative evidence that a client owes a particular charge". *Sears, Roebuck & Co. v. Goldstone & Sudalter,* 128 F.3d 10, 17 (1st Cir.1997).

Here, Atty. Quat offers two affidavits, one submitted by him and one by his co-counsel, Atty. Ford, in support of his motion to enforce his lien. Both affidavits state that on June 30, 2008, the Bistanys agreed to allocate $10,000 of whatever settlement was received to their legal fees and costs. The affidavits further state that the Bistanys agreed Attys. Quat and Ford would apportion the $10,000 as they saw fit and that the attorneys later agreed the entire $10,000 would go to Atty. Quat. In contrast, the Bistanys contend, in their *pro se* pleadings in opposition to the charging lien and seeking to vacate the affidavits, that they never agreed to pay $10,000 to their attorneys.

In light of the conflicting statements by the Bistanys and their attorneys, the Court finds that Atty. Quat has failed to meet his burden of proving the existence

of a fee agreement for $10,000. Even though Atty. Quat offers sworn affidavits that are contradicted only by the unsworn statements of the Bistanys, "[a]ffidavits are not conclusive of the facts alleged even if . . . no counter affidavits are presented". *Coonce v. Coonce*, 356 Mass. 690, 255 N.E.2d 330, 331 (1970).

Moreover, § 50 limits Atty. Quat to "his reasonable fees and expenses" as determined by the Court in consideration of such factors as his ability and reputation, the time he spent working on the settlement and the prices other attorneys usually charge to negotiate similar settlements, among others. *See McLaughlin v. Old Colony Trust Co.*, 313 Mass. 329, 47 N.E.2d 276, 280 (1943). The statute does not entitle him to enforce a specific alleged contractual amount.

■■■ Atty. Quat's remedy cannot, therefore, lie in the enforcement of a lien for attorneys' fees. Rather, he may sue the Bistanys to recover any fees they rightfully owe him. *See Torphy v. Reder*, 357 Mass. 153, 257 N.E.2d 435, 436, 438 (1970).

### C. Other Pending Motions Filed by the Plaintiffs

#### 1. Motion to Vacate Decision for a New Attorney

This Court has already allowed Atty. Quat to withdraw from representing the Bistanys and has allowed the Bistanys to proceed *pro se*. Therefore, the motion seeking such leave will be denied as moot.

#### 2. Motions to Vacate the Affidavits of Attys. Quat and Ford

Atty. Quat is within his right to submit affidavits in support of his motion to enforce his lien. Furthermore, even though the Bistanys have filed "motions" to vacate the attorney's affidavits, the pleadings are, in fact, oppositions to the enforcement of the attorney's lien. This Court will, therefore, treat the "motions" as oppositions.

#### 3. Motion to Enter My Wife's Photos for Evidence

Because this Court will enforce the settlement agreement, no further discovery is warranted. Moreover, in the body of the motion to allow such discovery, the Bistanys seek to present a settlement offer of $60,000 to PNC. That offer is out of place and plaintiffs' motion will be denied as moot.

#### 4. Motion to Submit an Amended Complaint

The settlement agreement between PNC and the Bistanys provides that this litigation be dismissed with prejudice. Because this Court will enforce the settlement agreement, the Bistanys' motion to amend their complaint will be denied as moot.

#### 5. Motion to Vacate PNC's Opposition to Submit an Amended Complaint

Similar to the Bistanys' "motions" to vacate the attorneys' affidavits, their "motion" to vacate PNC's opposition is, in effect, a reply to that opposition. Therefore, this Court will treat the "motion" as such a reply.

### ORDER

In accordance with the foregoing:

1) defendant's motion to enforce the settlement agreement (Docket No. 30) is **ALLOWED;**

2) plaintiffs' motion to oppose the enforcement of the settlement agreement (Docket No. 35) is **DENIED;**

3) plaintiffs' motion to vacate the charging lien (Docket No. 38) is **ALLOWED;**

4) Atty. Quat's motion to enforce his lien (Docket No. 37) is **DENIED;**

5) plaintiffs' motions to vacate decision for a new attorney (Docket No. 34), to enter photos for evidence in discovery (Docket No. 36) and to amend their complaint (Docket No. 41) are all **DENIED AS MOOT;** and

6) plaintiffs' motions to vacate affidavits of Attys. Quat and Ford (Docket Nos. 39 and 40) and to vacate opposition to amend complaint (Docket No. 44) are treated as non-motions and are thus **DENIED AS MOOT.**

So ordered.