Filed 3/7/16  Tsang v. Select Portfolio Servicing CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| SUE TSANG, | |
| Plaintiff and Appellant, | E061342 |
| v. | (Super.Ct.No. RIC1118713) |
| SELECT PORTFOLIO SERVICING, INC. et al., | O P I N I O N |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Gloria Trask, Judge, and David E. Gregory, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed with directions.

Sue Tsang, in pro. per., for Plaintiff and Appellant.

Wright, Finlay & Zak, Jonathan M. Zak, Gwen H. Ribar, and James J. Ramos for Defendants and Respondents.

1

# I. INTRODUCTION

Plaintiff and appellant Sue Tsang appeals from a judgment entered pursuant to the terms of a written settlement agreement between herself and defendants and respondents, Select Portfolio Servicing, Inc. (SPS) and others[1] (collectively defendants).  (Code Civ. Proc., § 664.6.)[2]  Tsang claims the trial court erroneously granted defendants' motion to enforce the terms of the parties' settlement agreement as a judgment.  She argues the settlement agreement, and the court's ruling on defendants' section 664.6 motion, did not require her to execute and return certain documents (the ancillary settlement documents) to defendants' counsel, namely, (1) Tsang's abandonment of her appeal from a judgment for possession in favor of defendants in an unlawful detainer action, (2) her dismissal of the present action, with prejudice, and (3) her voluntary withdrawal of two lis pendens she recorded against the Corona property from which she was evicted after defendants obtained it in a nonjudicial foreclosure sale.

We reject Tsang's claims.  The settlement agreement, which Tsang signed, unequivocally required Tsang to execute the ancillary settlement documents.  Curiously, however, the April 22, 2014, judgment, which defendants prepared, along with an order of the same date, required some but not all of the terms of the settlement agreement to be

---

[1] Defendants and respondents include Select Portfolio Servicing, Inc., U.S. Bank National Association, as Trustee, on behalf of the holders of the Credit Suisse First Boston Mortgage Security Corporation, Home Equity Pass Through Certificates, Series 2007-1 (U.S. Bank), National Default Servicing Corporation, and William J. Idleman.

[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

enforced as a judgment. Defendants do not complain about any of the missing terms, and it appears defendants obtained all of the relief they bargained for in entering into the settlement agreement. Still, the matter must be remanded to the trial court with directions to amend the judgment to require SPS to pay Tsang $13,500, plus prejudgment interest at the legal rate, from and after April 22, 2014, the date the judgment was entered. The judgment should have, but did not, include this key provision. The settlement agreement required SPS to pay Tsang $13,500 after Tsang signed and returned the ancillary settlement documents to defendants. Though Tsang never signed the ancillary settlement documents, defendants got the benefit of their bargain, so Tsang must get hers. Lastly, we deny Tsang's request for sanctions against defendants and their counsel.

## II. FACTS AND PROCEDURAL HISTORY

A. *The Underlying Litigation and Two Recorded Lis Pendens*

In July 2006, Tsang took out two mortgage loans in the amount of $419,993 and $139,997 secured by deeds of trust against her real property located at 14351 Asterleaf Lane in Corona (the property). On September 8, 2011, Tsang lost the property in a nonjudicial foreclosure sale to defendant U.S. Bank. U.S. Bank then filed an unlawful detainer action for possession of the property in the Riverside County Superior Court (case No. MVC1106183). In that action, a judgment for possession, in favor of U.S. Bank, and writ of possession for the property were issued on February 10, 2012. Tsang appealed the judgment of possession to the appellate division of the Riverside County Superior Court (case No. APP1200044) (the Appeal).

3

Tsang filed the present lawsuit—her third lawsuit against defendants—in November 2011.[3] Tsang's two prior lawsuits against defendants were dismissed, without prejudice, after they were removed to the United States District Court. In the two prior lawsuits, in the present (third) lawsuit, and in the Appeal from the judgment for possession, Tsang claimed the foreclosure and eviction were unlawful and that defendants wrongfully confiscated her personal property in evicting her from the property.

In connection with her second lawsuit, Tsang recorded a "Notice of Pendency of Action" against the property, identified as document No. 2011-0442417 (the first lis pendens). In connection with the present (third) lawsuit, Tsang recorded a second "Notice of Pendency of Action" against the property, identified as document No. 2011-0528335 (the second lis pendens). Tsang has represented herself in propria persona throughout the present lawsuit.

B. *The Settlement Agreement*

In November and December 2013, Tsang, defendants, and their respective counsel signed a settlement agreement, titled "Settlement Agreement and Release of Claims" (the settlement agreement or agreement). The settlement agreement required SPS to pay Tsang $13,500 (the settlement payment) within 20 days of its receipt of (1) a copy of the settlement agreement, signed by Tsang, (2) Tsang's original signature on an Internal

---

[3] On August 6, 2015, during the pendency of this appeal, we granted Tsang's motion to augment the record on appeal with court documents filed in the trial court.

4

Revenue Code form W-9, and (3) confirmation by Tsang's consulting attorney, Sasan Mirkarimi, that he was in possession of Tsang's signature on the ancillary settlement documents. Mr. Mirkarimi agreed to hold the ancillary settlement documents "in escrow" and deliver them to SPS's counsel of record, James J. Ramos, within two days of Mr. Mirkarimi's receipt, on behalf of Tsang, of the $13,500 settlement payment.

The ancillary settlement documents were attached to the settlement agreement as exhibits A, B, C, and D, and consisted of the following: (1) an "Abandonment of Appeal," whereby Tsang was to abandon her appeal in the unlawful detainer action (exh. A); (2) a "Request For Dismissal" of the present lawsuit, denoted "Voluntary Dismissal of the Third Lawsuit," with a box checked indicating it was to be "[w]ith prejudice" (exh. B); (3) a withdrawal of the first lis pendens, denoted "Voluntary Withdrawal of Lis Pendens" (exh. C); and (4) a withdrawal of the second lis pendens, denoted "Voluntary Withdrawal of Lis Pendens 2" (exh. D).

The settlement agreement also included general releases of claims by each party in favor of the other, "from any and all state or federal claims, appeals, demands or causes of action . . . arising from or related to the Loan, Dispute, and/or Litigation, which may exist from the beginning of time to the date of this Agreement." The agreement also provided that: "Plaintiff acknowledges that it is the objective of Defendants in entering into this Agreement to cause any and all civil litigation and/or appeals filed by Plaintiff against any of the individual Defendants . . . *to be dismissed with prejudice*. To that end, Plaintiff agrees to promptly exercise all reasonable measures related to, pertaining to, or

connected with causing The First Lawsuit, The Second Lawsuit, The Third Lawsuit, the Appeal, . . . and any other litigation initiated by Plaintiff against any of the Individual Defendants . . . *to be dismissed with prejudice*." (Italics added.)

On November 26, 2013, Tsang, through Mr. Mirkarimi, signed and returned the settlement agreement and the W-9 form to Mr. Ramos, but Tsang did not sign any of the ancillary settlement documents. In February 2014, a new consulting attorney for Tsang, Christopher Coburn, contacted Mr. Ramos, and Mr. Ramos agreed, on behalf of defendants, that Mr. Coburn would serve as the escrow for the ancillary settlement documents in place of Mr. Mirkarimi. Mr. Coburn then advised Mr. Ramos that Tsang wished to "prepare her own withdrawals of the lis pendens," even though the settlement agreement required her to sign the lis pendens withdrawals in the forms attached to the settlement agreement. Mr. Ramos agreed to accommodate Tsang's request, but Tsang never signed any of the ancillary settlement documents or similar forms.

## C. *Defendants' Section 664.6 Motion for Judgment*

On February 26, 2014, defendants filed a motion to enforce the settlement agreement as a judgment. (§ 664.6.) In a supporting declaration, Mr. Ramos adduced the settlement agreement and the other evidence described above, including that Tsang had signed the settlement agreement and W-9 form but had refused to sign any of the ancillary settlement documents or similar forms. Tsang responded to the motion, in propria persona, claiming Mr. Mirkarimi, who was not her attorney of record, had "betrayed" her by "pressuring" her to sign the settlement agreement without telling her

6

what was in it, and she signed the agreement without reading it. Tsang claimed Mr. Mirkarimi "wanted to make some money by offering his legal expertise to negotiate a settlement agreement," and persuaded Tsang that he "could get a settlement from Mr. Ramos" because he and Mr. Ramos were friends. Mr. Mirkarimi "would not file a Substitution of Attorney" and was unwilling to be her attorney of record; he would only represent her in negotiating a settlement with defendants. She "fully relied" on Mr. Mirkarimi's "expertise" to negotiate a settlement.

Tsang also claimed she did not have a complete copy of the settlement agreement until Mr. Coburn provided her with one in February 2014, and it was "full of distorted facts, falsehood[s], and misrepresentations." She asserted there was no "'meeting of the minds'" between herself and defendants regarding the terms of the agreement. She claimed the settlement agreement was "non-binding" because, though she admitted she signed the signature page of the agreement, she did not sign any of the ancillary settlement documents. When she signed the signature page she believed the agreement required defendants to "dismiss" their unlawful detainer action and judgment for possession and remove "their" derogatory information from her credit reports. She also asserted defendants "stole[]" her personal property worth $10,000 in evicting her, and she would not recover the value of her property after her attorney fees were subtracted from the $13,500 settlement payment.

In reply, defendants argued Tsang was bound by the general rule that a party is bound by the provisions of an agreement the party signed, even if the party did not read

the agreement and was unaware of its provisions. (*N.A.M.E.S. v. Singer* (1979) 90 Cal.App.3d 653, 656.) Defendants questioned the veracity of Tsang's claim that she did not read the settlement agreement before she signed it, and that she signed it "under duress" or pressure by Mr. Mirkarimi. Finally, Mr. Ramos denied having any discussions with Mr. Mirkarimi that "did not relate to" Tsang's case, and claimed he and Mr. Mirkarimi first spoke when Mr. Mirkarimi contacted him on July 30, 2014, on behalf of Tsang, to discuss the possibility of a settlement.

D. *The Trial Court's April 22, 2014, Order and Judgment*

At a March 27, 2014, hearing, the trial court granted defendants' motion to enforce the settlement agreement and "grant judgment" pursuant to section 664.6. The court denied defendants' request for $5,350 in attorney fees they claimed they incurred in making the motion.[4] By an order prepared by defendants and filed on April 22, the court (1) granted defendants' "Motion for Judgment Pursuant to Settlement," (2) expunged *the first lis pendens*, bearing instrument No. 2011-0528335, and (3) directed defendants to submit a proposed judgment.

The judgment, prepared by defendants, was entered on April 22, the same date as the order, and *does not* incorporate or purport to enforce *all of the terms* of the settlement

---

[4] The settlement agreement does not include an attorney fee provision, including a provision that the prevailing party in a motion to enforce the settlement agreement as a judgment (§ 664.6) may recover its attorney fees from the opposing party.

agreement as a judgment.[5]  The judgment is limited to a dismissal of the present action, with prejudice, in favor of defendants, and does not (1) order the dismissal of the Appeal (from the judgment for possession), (2) order the expungement of the first or the second lis pendens, or (3) require defendants to make the $13,500 settlement payment to Tsang.

It appears defendants did not need the Appeal from the judgment of possession to be abandoned, because they obtained a writ of possession and evicted Tsang from the property in February 2014.  In addition, a recorded, certified copy of the April 22 order would have expunged the first lis pendens recorded against the property—the one giving notice of Tsang's second action against defendants.  (§ 405.60.)

Regarding the second lis pendens, defendants may have believed that a recorded, certified copy of the judgment dismissing the present action would expunge the second lis pendens against the property—the one giving constructive notice of the present action. But the judgment is not final; it is now on appeal (§ 1049), and only a final judgment expunges a lis pendens (*Garcia v. Pinhero* (1937) 22 Cal.App.2d 194, 196-197; § 1049 [action is pending until its final determination upon appeal, or until the time for appeal has passed, unless the judgment is sooner satisfied]; 2 Cal. Real Property Remedies and Damages (Cont.Ed.Bar 2d ed. 2015) Lis Pendens, § 13.110, pp. 13-92 - 13-93.)  In any event, defendants did not seek an order expunging the second lis pendens.  (See *id.* at § 13.91, p. 13-76.)  The only thing missing from the judgment—in order to enforce *all of*

---

**5**  Judge Gloria Connor Trask presided at the March 27, 2014, hearing on defendants' motion to enforce the settlement agreement as a judgment, but Commissioner David E. Gregory signed the April 22 order and judgment.

*the terms* of the settlement agreement—is an order directing SPS to make the $13,500 settlement payment to Tsang.

E. *Tsang's Postjudgment Motions to Set Aside the Judgment, Modify the Judgment*, *and Enforce the $13,500 Settlement Payment*

On April 21, 2014, one day before the judgment was entered, Tsang filed a motion to set aside the judgment, claiming, as she does on this appeal, that she did not read the settlement agreement before she signed it and that she signed it under duress. The motion was denied. On June 13, 2014, Tsang timely appealed from the April 22 judgment.

While the present appeal was pending, Tsang continued to attack the April 22 order and judgment in the trial court. On July 31, 2014, she filed a motion in the trial court to strike portions of the order and the judgment on the ground they were not "drawn in conformity with the settlement [agreement]." Tsang argued, as she does on this appeal, that the settlement agreement did not require the present action to be dismissed with prejudice or the first or second lis pendens to be expunged, and noted that the trial court did not mention "expunge" or "with prejudice" at the March 27 hearing. Tsang also pointed out that, on June 13, 2014, when she asked Mr. Ramos when she would receive the $13,500 settlement payment, he said, "No" and "We are not going to pay." This motion was also denied.

On August 26, 2014, Tsang filed a third postjudgment motion in the trial court, seeking "to enforce [the] settlement payment of $13,500" and dismiss the unlawful detainer action. Apparently, this motion was also denied. In any event, Tsang did not

appeal any of the postjudgment orders denying her motions to set aside or modify the judgment; she only appealed from the judgment.

F. *Tsang's Request for Judicial Notice is Denied*

On July 13, 2014, Tsang filed a motion to augment the record on appeal with 21 documents. By an August 6, 2015, order, we granted the motion in part and augmented the record with items 1, 4 through 9, and 13 through 19, on the ground these items consisted of records filed in the present action. (Cal. Rules of Court, rule 8.155(a)(1)(A).) By the same order, we declined to augment the record with items 2, 3, 10, 11, 12, 20, and 21, on the ground that Tsang failed to state whether these items were filed, lodged with, or viewed by the court. We deemed this part of the motion to be a request for this court to take judicial notice of these items, and reserved ruling on the request for this appeal.

We now deny the request to take judicial notice of items 2, 3, 10, 11, 12, 20, and 21. These items consist of court records filed in the first or second lawsuit, the unlawful detainer action, or the federal district court. Again, however, there is no showing that any of these items were filed, lodged with, or presented to the trial court in the present action, in ruling on defendants' section 664.6 motion or at any other time. Absent exceptional circumstances, a reviewing court will generally not take judicial notice of evidence not presented to the trial court, and no exceptional circumstances are shown here. (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 2.)

11

### III. DISCUSSION

A. *Overview of Section 664.6*

Section 664.6 provides, in pertinent part, that: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court . . . for settlement of the case . . . the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement." "'[The statute] was enacted to provide a summary procedure for specifically enforcing a settlement contract without the need for a new lawsuit.' [Citation.]" (*Bowers v. Raymond J. Lucia Companies, Inc.* (2012) 206 Cal.App.4th 724, 732.)

In ruling on a section 664.6 motion, the court must determine whether the parties entered into a valid and binding settlement agreement (see *Khavarian Enterprises, Inc. v. Commline, Inc.* (2013) 216 Cal.App.4th 310, 329) and must also determine the terms of the parties' settlement agreement (*Bowers v. Raymond J. Lucia Companies, Inc.*, *supra*, 206 Cal.App.4th at p. 732 [court cannot enforce a settlement under § 664.6 unless it finds the parties expressly consented to the material terms of the settlement]). In ruling on a section 664.6 motion, the court may receive evidence, determine disputed facts, and enter the terms of the settlement as a judgment, but the court may not *create* the material terms of a settlement; it must decide what the parties agreed upon. (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 809-810.)

12

The court's factual findings in ruling on a section 664.6 motion for judgment will not be disturbed on appeal if substantial evidence supports them. (*Chan v. Lund* (2010) 188 Cal.App.4th 1159, 1165-1166.) Here, the trial court was not asked to make, and did not make, any factual findings in ruling on defendants' motion. (*Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 970; § 632 [trial court must issue statement of decision, upon a timely request, following "the trial of a question of fact by the court"].) Hence, we apply the doctrine of implied findings and presume that the court made all factual findings necessary to support its decision, to the extent substantial evidence supports such findings. (*Acquire II, Ltd. v. Colton Real Estate Group*, *supra*, at p. 970.)

B. *The Motion to Enforce the Settlement Agreement as a Judgment Was Properly Granted, and Defendants Received the Benefit of Their Bargain, But the Judgment Must be Amended to Direct SPS to Make the $13,500 Settlement Payment to Tsang*

Tsang claims the court abused its discretion in granting defendants' motion to enforce the settlement agreement as a judgment. She argues, as she did in the trial court, that she signed the agreement without reading it "under duress" or pressure from her attorney, Mr. Mirkarimi, and she believed the agreement did not require her to expunge the first or second lis pendens, or dismiss the present action *with prejudice*, but instead required defendants to dismiss their unlawful detainer action or judgment for possession of the property. These claims lack merit.

13

First, in granting defendants' motion, the trial court could have reasonably discredited Tsang's claim that she did not read the agreement before she signed it, and that she signed the agreement "under duress" or "pressure" from Mr. Mirkarimi.  Further, and as defendants point out, as a general rule a party is bound by an agreement the party signed even if the party did not read the agreement and was unaware of its provisions.  (*C9 Ventures v. SVC-West, L.P.* (2012) 202 Cal.App.4th 1483, 1501; *N.A.M.E.S. v. Singer*, *supra*, 90 Cal.App.3d at p. 656.)  "A party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing.  [Citations.]"  (*Martin Storage & Trucking, Inc. v. Benco Contracting & Engineering, Inc.* (2001) 89 Cal.App.4th 1042, 1049.)  There is no reason this general rule should not apply here.  Tsang admitted she signed the agreement, and even if she signed it under "duress" or "pressure" from Mr. Mirkarimi, there is no evidence and Tsang has never claimed that she signed the agreement under duress or pressure from any of the defendants, or that defendants or their counsel, Mr. Ramos, knew that Mr. Mirkarimi would pressure Tsang to sign the agreement.  "[I]n general, duress must emanate from the opposing party to an agreement, not one's own attorney, unless the opposing party knows of the duress."  (*Chan v. Lund*, *supra*, 188 Cal.App.4th at p. 1175.)  Thus, a settlement agreement is not voidable because a party's attorney pressured the party to sign the agreement, unless another party to the agreement knew about the duress.  (*Ibid.*; *Bistany v. PNC Bank, NA* (D. Mass. 2008) 585 F.Supp.2d 179, 183.)  The agreement is therefore valid and binding on Tsang and defendants.

In signing the agreement, Tsang agreed to execute the ancillary settlement documents attached to the agreement, but she never did so. And, contrary to Tsang's belief, the agreement did not require defendants to dismiss the unlawful detainer action, or remove "their" derogatory information from Tsang's credit reports. To the contrary, the agreement required SPS to pay Tsang $13,500, within 20 days of its receipt from Tsang of the executed ancillary settlement documents. By these documents, Tsang was to (1) voluntarily abandon her Appeal from the judgment for possession of the property in the unlawful detainer action, (2) voluntarily expunge the first and second lis pendens against the property, and (3) dismiss the present action, with prejudice.

As noted, the April 22 order, which defendants prepared, expunged the first lis pendens but not the second, and the judgment, which defendants also prepared, was limited to dismissing the present action with prejudice. Neither the order nor the judgment directed the abandonment of Tsang's Appeal in the unlawful detainer action. Apparently, however, defendants determined that they no longer needed an order or judgment directing the abandonment of the Appeal or expunging the second lis pendens.

In any event, the only key provision of the settlement agreement that is missing from the judgment is a directive requiring SPS to make the $13,500 settlement payment to Tsang. The judgment should have, but did not, include this key provision. Defendants received the benefit of the bargain they made in signing the settlement agreement, though not with Tsang's cooperation, but in successfully moving the trial court to enforce the

15

settlement agreement as a judgment. (§ 664.6.) Because defendants received the benefit of their bargain in entering into the settlement agreement, Tsang must receive hers.

C. *Tsang's Motion for Sanctions is Denied*

Lastly, Tsang asked that this court award her sanctions of $2,980 against defendants and Mr. Ramos, jointly and severally, to compensate her for 15 hours' time, at the rate of $195 per hour, that she has expended in preparing her briefs on appeal and expects to expend in appearing at oral argument. This is not appropriate ground for imposing sanctions. (§ 128.7.) Thus, the request is denied.

## IV.  DISPOSITION

The matter is remanded to the trial court with directions to amend the judgment to direct SPS to make the $13,500 settlement payment to Tsang, plus prejudgment interest at the legal rate, from and after April 22, 2014, the date the judgment was entered and should have included the payment provision. The court may make additional amendments to the judgment and may issue additional orders, as appropriate, to enforce the terms of the parties' settlement agreement. In all other respects, the judgment is affirmed. The parties shall bear their respective costs on appeal. (Cal. Rules of Court, rule 8.278.)

16

MILLER _____
J.

We concur:

RAMIREZ _____
P. J.

McKINSTER _____
J.