NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1141

STANLEY WEBB & another[1]

vs.

GEORGE LEONTIRE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiffs, Stanley and Jacqueline Webb, appeal from a judgment after a bench trial in the Superior Court.[2]  We conclude that the judge properly allowed defense counsel to question the plaintiffs on criminal matters directly connected to the defendant's representation of the plaintiffs.  We further conclude that the abundant evidence of the defendant's work performed permitted the judge to find that the defendant had fully earned the paid fee.  Finally, concluding that the judge

_____

[1] Jacqueline Webb.

[2] "Because these parties share a surname, we will refer to each by first name."  Franchi Mgt. Co. v. Flaherty, 93 Mass. App. Ct. 418, 419 n.7 (2018).

properly found that the defendant did not act unfairly or deceptively, we affirm.

1. Cross-examination on criminal matters. "A trial judge's evidentiary ruling is owed 'great deference' and will amount to an abuse of discretion only where we conclude that the judge 'made a clear error of judgment in weighing the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives.'" Commonwealth v. Hinds, 494 Mass. 681, 689 (2024), quoting L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014). "Ultimately, it is 'a determination for the judge to make and one which we do not disturb unless, in our judgment, it is palpably wrong.'" Commonwealth v. Ramos, 63 Mass. App. Ct. 379, 381 (2005), quoting Commonwealth v. Fordham, 417 Mass. 10, 22 (1994).

Jacqueline Webb testified on direct examination that, when she started at Nutel Communications, Inc. (Nutel), she was a technician, and "then over time, [she] became a salesperson attempting to gain new locations to dispense the phone cards. And then after that, [she] worked mostly in office, where [she] paid bills and accounting, that sort of thing." To impeach Jacqueline's testimony that her role at the relevant time was clerical, defense counsel asked her whether she made $9,000 deposits "to avoid the reporting requirements from the bank." After the plaintiffs objected, the judge noted that he had

2

"never seen a case like this where a civil litigant who's facing trial in a criminal matter has testified about the substance of that criminal case." Consequently, he ruled, Jacqueline had "open[ed] the door for cross-examination. Counsel is entitled to inquire about the scope of her involvement with those enterprises." See Commonwealth v. Quinn, 469 Mass. 641, 648 (2014) ("evidence that otherwise may be inadmissible may become admissible where the [witness] opens the door to its admission"). Having previously stated that "the underlying criminal case is part and parcel to this overall dispute," the judge ruled that "counsel is entitled to inquire to this witness about her knowledge of what she was doing in and around the time, not for purposes of securing a prosecution but to determine her knowledge of whether she was knee-deep in this process." See Mass. G. Evid. § 611(b)(1) (2025) ("A witness is subject to cross-examination on any matter relevant to any issue in the case, including credibility and matters not elicited during direct examination"); Nuger v. Robinson, 32 Mass. App. Ct. 959, 959-960 (1992).

Specifically, the judge stated that he would "allow some testimony as to the scope of this witness's involvement with Nutel only as it relates to impeachment of her testimony" and where it "bears on the issue of what the scope of representation was, whether a flat fee of the magnitude that was insisted on

3

. . . is appropriate or not, and then the issue of quantum meruit."  See Zabin v. Picciotto, 73 Mass. App. Ct. 141, 151 (2008), quoting Salem Realty Co. v. Matera, 10 Mass. App. Ct. 571, 576 (1980), S.C., 384 Mas. 803 (1981) (factors for quantum merits include "the complexity of the case, the size of the case in terms of dollars, . . . the fees usually charged for work of the kind involved").

After Jacqueline denied making deposits "to evade the reporting of cash transactions over $10,000," counsel asked her whether she told her mother to "burn[] all the paperwork as it pertains to the machines," whether she had personal knowledge that the State police served her sister with papers, and whether she had personal knowledge of the execution of the search warrant at the Webb home.  At the instruction of counsel, Jacqueline refused to answer these questions.  Counsel then stated that Jacqueline "would invoke her privilege as to any further questioning."[3]  Ultimately, the judge struck Jacqueline's testimony.

To be sure, defense counsel's questions were aggressive and concerning.  The judge, however, tread carefully, ruling "question by question" and reiterating that "as an overarching

_____

[3] The plaintiffs did not call Stanley as a witness, but the defendant did.  When Stanley was asked whether he knew about the valuables in his house, counsel represented that he would refuse to answer any questions.

4

theme, [he does not] want this trial to get derailed" or to "stray into that . . . open criminal case." The most troubling question -- whether Jacqueline structured deposits to evade reporting requirements -- was answered. The other questions, about whether Jacqueline instructed her mother to burn paperwork and whether she had personal knowledge about police action, attempted to elicit evidence that would rebut her testimony about her clerical role at Nutel and would explain the scope of representation. We discern no abuse of discretion or palpable error in the judge's decision to allow these questions. See Laramie v. Philip Morris USA Inc., 488 Mass. 399, 413 (2021), quoting Gath v. M/A-Com, Inc., 440 Mass. 482, 488 (2003) ("A judge has broad discretion to make evidentiary rulings"); Carrel v. National Cord & Braid Corp., 447 Mass. 431, 446 (2006) ("We will not reverse such [evidentiary] decisions unless there is palpable error").

In any event, the judge's decision to strike Jacqueline's testimony was correct. "A witness . . . is not entitled to make a blanket assertion of the privilege. The privilege must be asserted with respect to particular questions, and the possible incriminatory potential of each proposed question, or area which the [opposing party] might wish to explore, must be considered." Hasouris v. Sorour, 92 Mass. App. Ct. 607, 613 (2018), quoting Commonwealth v. Martin, 423 Mass. 496, 502 (1996). Once

Jacqueline improperly made a blanket assertion of the privilege against self-incrimination to avoid cross-examination, the trial judge had no choice but to strike her testimony.  See Commonwealth v. Silva, 93 Mass. App. Ct. 609, 615 (2018). Accord Commonwealth v. Pixley, 77 Mass. App. Ct. 624, 628-629 (2010).

2.  Quantum meruit.  Quantum meruit is "an obligation that arises under quasi contract theory in which an obligation is 'created by law "for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent."'"  Liss v. Studeny, 450 Mass. 473, 479 (2008), quoting Salamon v. Terra, 394 Mass. 857, 859 (1985).  "In determining the fair value of an attorney's quantum meruit recovery, '[t]he question of what is fair and reasonable compensation for legal services rendered is one of fact for a trial judge to decide.'" Hug v. Gargano & Assocs., P.C., 76 Mass. App. Ct. 520, 525 (2010), quoting Malonis v. Harrington, 442 Mass. 692, 699 (2004).  "[A]n appellate court will accept the facts as found by the judge in a jury-waived case, unless shown to be clearly erroneous, and will accord deference to the judge's conclusions."  Zaskey v. Whately, 61 Mass. App. Ct. 609, 614 (2004), citing Mass. R. Civ. P. 52 (a), as amended, 423 Mass. 1402 (1996).  "A trial judge's finding is clearly erroneous only when, 'although there is evidence to support it, the reviewing

6

court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" H1 Lincoln, Inc. v. South Washington St., LLC, 489 Mass. 1, 13 (2022), S.C., 495 Mass. 484 (2025), quoting Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 509 (1997), S.C., 428 Mass. 543 (1998), and S.C., 432 Mass. 43 (2000).

In examining a quantum meruit claim, a trial judge "may look to the terms of the underlying contract to help determine appropriate recovery." Liss, 450 Mass. at 480. "Other factors to be considered are the customary ones applicable in measuring a legal fee: the special skills which may have been brought to bear, the complexity of the case, the size of the case in terms of dollars, the caliber of the services, the fees usually charged for work of the kind involved, the time spent, and the success achieved." Zabin, 73 Mass. App. Ct. at 151, quoting Salem Realty Co., 10 Mass. App. Ct. at 576.

The attorney "always bears the burden of proof in any proceeding to resolve a billing dispute, whether the lawyer appears as a plaintiff seeking to recover a fee or as a defendant in a suit for a refund." Sears, Roebuck & Co. v. Goldstone & Sudalter, P.C., 128 F.3d 10, 17 (1st Cir. 1997). "To satisfy this burden, the attorney must provide 'more than purely speculative evidence that a client owes a particular

charge.'" Bistany v. PNC Bank, NA, 585 F. Supp. 2d 179, 184 (D. Mass. 2008), quoting Sears, Roebuck & Co., supra.

Here, Attorney Leontire testified extensively to his reconstruction of the work he performed. From June to August 2017, Attorney Leontire spent over 300 hours preparing for the impending criminal litigation. He met with the plaintiffs, called and texted the plaintiffs and the other attorneys, e-mailed with the plaintiffs and related parties, reviewed dozens of search warrants, years of tax returns, and other documents pertaining to Nutel, and researched, "pull[ing] all the gaming statutes in Massachusetts" and "look[ing] at prior decisions. . . . that involved the gaming statutes." Attorney Leontire met with the plaintiffs "pretty much every day," and testified that "there wasn't a day that went by that [he] didn't work between 10 and 15 hours every day," and "this was the only case [he] worked on during this entire period." The reconstructed accounting, supported by call, e-mail, and text message logs, outlined all of these hours. Malonis, 442 Mass. at 699-700 (attorney provided reconstructed invoice not from contemporaneous time records). Cf. Bistany, 585 F. Supp. 2d at 184 (attorney provided only two affidavits in support of claim).

Attorney Leontire also brought forward an expert, Attorney James Bolan, who opined that, "[g]iven the nature of the case, given the issues involved, the risks involved, [the accounting]

8

also seemed quite appropriate," and confirmed that "$600 an hour is consistent with fees charged for similar work." He went on: "Mr. Leontire, particularly, performed a substantial amount of work and that it was within the bounds of what had been agreed and was appropriate."

The detailed evidence and testimony introduced by Attorney Leontire provided more than adequate evidence to support the judge's conclusion that, "under a theory of quantum meruit, . . . the value of services rendered for the Webbs meets, and potentially exceeds, the $139,705.26 fee paid by Stanley." See Hug, 76 Mass. App. Ct. at 526 (judge properly awarded attorney compensation based on skill and experience, usual fees, time spent on claim, and other "intangible contributions"). We discern no clear error.

3. Violation of G. L. c. 93A. a. Standard of review. "To state a claim under the consumer protection statute, G. L. c. 93A, § 9, a plaintiff must allege facts sufficient to establish four elements: first, that the defendant has committed an unfair or deceptive act or practice; second, that the unfair or deceptive act or practice occurred 'in the conduct of any trade or commerce;' third, that the plaintiff suffered an injury; and fourth, that the defendant's unfair or deceptive conduct was a cause of the injury." Rafferty v. Merck & Co., 479 Mass. 141, 161 (2018), citing G. L. c. 93A, § 2 (a). "[T]he

9

practice of law constitutes 'trade or commerce' for purposes of liability under c. 93A." Baker v. Wilmer Cutler Pickering Hale & Dorr LLP, 91 Mass. App. Ct. 835, 850 (2017), quoting Brown v. Gerstein, 17 Mass. App. Ct. 558, 570 (1984).

"[W]hether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact." H1 Lincoln, Inc, 489 Mass. at 13-14, quoting Casavant v. Norwegian Cruise Line Ltd., 460 Mass. 500, 503 (2011). "Courts must consider whether the nature, purpose, and effect of the challenged conduct is coercive or extortionate." Beverly v. Bass River Golf Mgt., Inc., 92 Mass. App. Ct. 595, 606 (2018), quoting Diamond Crystal Brands, Inc. v. Backleaf, LLC, 60 Mass. App. Ct. 502, 507 (2004). "To rise to the level of an 'unfair' act or practice, the defendant's conduct must generally be of an egregious, non-negligent nature." Walsh v. TelTech Sys., Inc., 821 F.3d 155, 160 (1st Cir. 2016). "Likewise, a practice or act is 'deceptive' for purposes of G. L. c. 93A 'if it possesses a tendency to deceive.'" Governo Law Firm LLC v. Bergeron, 487 Mass. 188, 194 n.13 (2021), quoting Aspinall v. Philip Morris Cos., 442 Mass. 381, 394 (2004). We review the trial judge's factual findings in this regard for clear error. Bruno v. Alliance Rental Group, LLC, 103 Mass. App. Ct. 170, 183 (2023) ("Factual findings underpinning a c. 93A claim are reviewed for clear error").

10

b.  Billing from August 10 to August 20.  Late on August 10, 2017, Stanley texted Attorney Leontire, demanding he not "work on [the] case any further and provide [a] summary of hours worked."  Between August 10 and August 20, Attorney Leontire requested payment for just over two hours of work that consisted solely of communications regarding the close of the representation.  Nothing in Attorney Leontire's calculation of "a de minimus amount of time attributable to communicating with Stanley and coordinating the production and transfer of documents to Stanley's new lawyer" reveals any conduct that is unfair or deceptive.  Indeed, upon termination of the representation, a lawyer has an ethical duty to assist the client and "take steps to the extent reasonably practicable to protect a client's interests," Mass. R. Prof. C. 1.16(d), as amended, 471 Mass. 1397 (2015).  See Malonis, 442 Mass. at 700.

c.  Posttermination accounting.  On August 10, 2017, Attorney Leontire and Stanley's attorney-client relationship ended.  Any agreement between the two likewise ended, and Attorney Leontire had no right to recover under the agreement.  Halstrom v. Dube, 481 Mass. 480, 484-485 (2019).  See Finard & Co., LLC v. Sitt Asset Mgt., 79 Mass. App. Ct. 226, 230 (2011), quoting Boswell v. Zephyr Lines, Inc., 414 Mass. 241, 250 (1993) ("[r]ecovery in quantum meruit presupposes that no valid contract covers the subject matter of a dispute.  Where such a

11

contract exists, the law need not create a quantum meruit right to receive compensation for services rendered").  Attorney Leontire was entitled instead to "recover the reasonable value of his services on a theory of quantum meruit."  Malonis, 442 Mass. at 701.  Although the plaintiffs' subsequent counsel threatened suit unless Attorney Leontire sent a "detailed accounting of the criminal retainer of $139,900.00 and the remainder of the monies," no accounting was required.  Indeed, Attorney Leontire testified that he never sent the accounting to Stanley because subsequent counsel "immediately said he was going to sue me."[4]  The trial judge reasonably found that Attorney Leontire's decision to share a reconstructed accounting through the Office of Bar Counsel complaint process was not coercive, egregious, or an example of "delaying tactics that were fraught with deceit, conflicts of interest, breach of ethical rules of confidentiality of privileged information, and the wrongful holding back of monies."  Grand Pac. Fin. Corp. v. Brauer, 57 Mass. App. Ct. 407, 419 (2003).

---

[4] Although a prompt and contemporaneous accounting is expected in an ordinary hourly-rate representation, Attorney Leontire's expert established that an attorney working on a flat fee is not required "to keep contemporaneous records."  In any event, "disciplinary rules provide standards of professional conduct of attorneys and do not in and of themselves create independent causes of action."  Bratcher v. Moriarty, Donoghue & Leja, P.C., 54 Mass. App. Ct. 111, 115 n.8 (2002), quoting Doe v. Nutter, McClennen & Fish, 41 Mass. App. Ct. 137, 141 (1996).

12

d. "Nonrefundable" fee. The plaintiffs contend that Attorney Leontire "acted as if the monies he secured from the plaintiffs was not refundable," and, therefore, he violated G. L. c. 93A. Although unlawful billing for a lawyer's services may constitute a chapter 93A violation, see Sears, Roebuck & Co., 128 F.3d at 19; Doucette v. Kwiat, 392 Mass. 915, 916-917 (1984); Guenard v. Burke, 387 Mass. 802, 809 (1982), the plaintiffs' contention misses the mark. See also Malonis, 442 Mass. at 701, quoting Salem Realty Co., 10 Mass. App. Ct. at 575 ("the right of a client to [change lawyers] has not much value if the client is put at risk to pay the full contract price for services not rendered and to pay a second lawyer as well"); Smith v. Binder, 20 Mass. App. Ct. 21, 23 (1985) ("if he discharges his lawyer, the client is not bound to pay for services not rendered").

Attorney Leontire testified that he "absolutely" did not recall Attorney Jose Baez's describing the fee as nonrefundable. Even though Attorney Jose Baez later sent a letter to the plaintiff's subsequent counsel stating that "Stanley Webb signed a nonrefundable fee agreement with the Baez Law Firm for $250,000," the evidence did not require a finding that Attorney Leontire "affirmatively adopted" the letter from Attorney Baez

13

through "willful inaction."[5]  Nowhere does the agreement state that the fee was nonrefundable.[6]  To the contrary, the expert explained that the plaintiffs were not charged a nonrefundable retainer but a "flat fee, also known as a fixed fee," which is "what [the attorney is] going to be paid for the case, assuming [the attorney] make[s] it beginning to end."  A flat fee can be placed "immediately in [the attorney's] operating account" because "[i]t's earned on payment."  The expert further explained that Florida, where Attorney Baez primarily practices, "permits a nonrefundable true retainer and a nonrefundable flat fee, which a lot of lawyers in Florida call a retainer."

In any event, upon Attorney Leontire's discharge, the issue was one of quantum meruit.  Attorney Leontire would indeed have had to "return the unused portion of the fee that was already [his]," but here Attorney Leontire had a reasonable belief that he had earned the entire fee, as evidenced by the fact that the

---

[5] Attorney Jose Baez, along with Attorney Ronald Sullivan and Attorney Leontire, constituted the Baez Law Firm.

[6] The parties disputed whether the agreed-upon flat fee was $250,000 or $500,000 and whether the operative fee agreement stated "nonrefundable," but a signed fee agreement without the word "nonrefundable" was entered into evidence.  The trial judge credited the defendant's and Attorney Sullivan's testimonies, and found that the fee agreement introduced in evidence was accurate.  A judge's choice between "two permissible views of the evidence . . . cannot be clearly erroneous."  Pehoviak v. Deutsche Bank Nat'l Trust Co., 85 Mass. App. Ct. 56, 65 (2014), quoting Edinburg v. Edinburg, 22 Mass. App. Ct. 199, 203 (1986).

14

judge ultimately found that he had done so.  The judge likewise interpreted the fee not as "nonrefundable" but as "fully earned once the client pa[id] it," agreeing that, "if the legal services were not fully performed and the client terminated the services, then the [plaintiffs] would be 'entitled to an evaluation of the quantum merit.'"  We discern no error.

Judgment affirmed.

By the Court (Meade,
  Ditkoff & Toone, JJ.[7]),

Clerk

Entered:  March 13, 2026.

---

[7] The panelists are listed in order of seniority.