# United States Court of Appeals
## For the First Circuit

No. 02-2307

KATHLEEN E. BANDERA,

Plaintiff, Appellee,

v.

CITY OF QUINCY; JAMES SHEETS, MAYOR;
THOMAS FRANE, POLICE CHIEF,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Marianne B. Bowler, U.S. Magistrate Judge]

Before

Boudin, Chief Judge,

Baldock,* Senior Circuit Judge,

and Howard, Circuit Judge.

David F. Grunebaum with whom Holtz Gilman Grunebaum and Monica
E. Conyngham, City Solicitor, City of Quincy, were on brief for
appellant City of Quincy.
Kathleen E. Bandera pro se.

September 12, 2003

*Of the Tenth Circuit, sitting by designation.

**BOUDIN**, <u>Chief Judge</u>.  This is an appeal by the City of Quincy from a jury verdict against the city in favor of Kathleen Bandera.  The jury awarded Bandera $135,000 in punitive damages for sexual harassment, seemingly under state law.  The appeal presents two different issues--whether the claim was barred by a prior purported settlement agreement and whether the trial was infected by error.  The background facts follow.

In September 1997, Bandera was hired by the City of Quincy as executive director of a newly established, or to be established, Community Policing Commission.  In the role she reported to then-Mayor James Sheets and Police Chief Thomas Frane.  According to testimony at the later trial, both men warned her that she would encounter difficulties in her new post both as a woman and as a civilian.

Bandera testified at trial that she was subject to discriminatory treatment during her brief tenure as director: that she was excluded from meetings, ridiculed, and subjected by male officers to graphic details of their sexual exploits.  Further, she said, Sheets and Frane failed to take steps to halt this harassment although they were advised of at least some of Bandera's concerns.  She told the jury that in early June 1998 Frane asked Sheets to replace her with a male police officer.  On June 9, 1998, Bandera was terminated effective at the end of the month.

Bandera responded by suing the city, Frane, and Sheets in the federal district court, alleging gender discrimination of two kinds: sexual harassment and wrongful termination. Her claims were based on two federal statutes--Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (2000), and Section 1983, 28 U.S.C. § 1983 (2000)--and on the Massachusetts Fair Employment Practices Act, Mass. Gen. Laws ch. 151B (2000). After initial discovery, the district court in September 2001 scheduled trial for November 13, 2001.

The parties then conferred over two days at the end of October 2001 (October 29 and 30) with a mediator. This resulted in a handwritten agreement, dated October 30, 2001, and signed separately by counsel for the defendants, by counsel for Bandera, and by Bandera herself. The text of the "Memorandum of Agreement" is as follows:

> 1. The parties will enter a Stipulation of dismissal with prejudice, and without costs.
>
> 2. The City will pay $21,300 to "Wendy Kaplan, Esq., as Attorney for Kathleen Bandera." The City will issue a 1099 for this amount to Wendy Kaplan, Esq.
>
> 3. The City will cause the Quincy School Committee to issue an employment contract to Kathleen Bandera for a position in the Quincy Public Schools as a permanent substitute for the balance of the 2001-2002 school year.
>
> 4. If Bandera is not hired by the Quincy Public Schools for a permanent teaching position on or before the start of the 2002-2003 school year, Mayor Sheets will recommend

to the Superintendent that Bandera be offered a contract as a permanent substitute for the 2002-2003 school year. If the Superintendent declines to offer the contract because of lack of funds, the Mayor will take all necessary steps to attain sufficient funding.

5. The parties will execute a general release of all claims asserted or unasserted and a comprehensive settlement document which shall include non-admission and non-disclosure provisions.

6. Both the facts of an agreement, and the terms of this agreement, shall not be disclosed, except to the U.S. District Court prior to November 13, 2001.

7. This settlement, and the terms of settlement, shall not be deemed or construed as an admission or finding of a violation of any law, policy, custom, or procedure, and shall not be introduced as evidence of such a violation in any other proceeding.

8. David Grunebaum has the authority to sign for the defendants.

At some point in early November 2001, Bandera herself apparently called defendants' counsel to disavow the settlement agreement and she thereafter refused to sign a typewritten version of the agreement and consonant release. In the election held on November 6, 2001, Sheets was defeated by another candidate. On November 13, 2001, Bandera's own counsel filed a motion to withdraw. On November 19, 2001, the parties appeared before the district court and the city moved to enforce the settlement agreement.

-4-

Bandera responded that she had been coerced into the settlement by her attorney's alleged threats (e.g., that Bandera might be held in contempt). Further, Bandera said that there had been at the time of the written agreement an oral agreement between both attorneys and Bandera that--if Bandera signed and remained silent until the election--the agreement would be redrafted afterwards to address Bandera's concerns and that if Mayor Sheets were not re-elected, the agreement would be null and void.

The district court then gave Bandera 30 days to retain new counsel. In December 2001, incident to her request to withdraw, Bandera's counsel made filings including an affidavit disputing in general terms Bandera's version of what had occurred at the mediation and settlement and countering certain of Bandera's specific allegations. Her counsel did not say one way or the other what she had said to Bandera incident to the signing but did say that the terms of the agreement had originally been proposed by Bandera herself.

At a status conference on January 4, 2002, Bandera--now representing herself--objected to the motion to enforce the settlement agreement, saying that the agreement was only preliminary and that Sheets was no longer mayor. The district judge told Bandera that the city would still have to follow through with its commitment but Bandera said that she wanted to get out of the settlement agreement and to proceed with a new attorney. The

-5-

defendants repeated that they had a valid settlement. The district judge then stated:

> That [referring to the signed Memorandum of Agreement] is going to lead to another trial, whether she, you know, whether she intended to do it or she didn't intend to do it.
>
> What I am going to do is -- I think the case should be settled. This is America. If she wants to try her case, she can try it. I am going to give her a trial date three months from now. Give her a date. No continuances. If you don't get a lawyer, you are going to have to try the case yourself.

Responding to a further objection from the defendants, the court responded, "just for the record, I am going to deny the request to enforce the settlement agreement."

On January 7, 2002, the district court issued a written decision denying defendants' motion to enforce the settlement. The district court noted that the parties signed only the "Memorandum of Agreement" anticipating a final comprehensive agreement, and never signed the final agreement, and continued:

> "As a general rule, a trial court may not summarily enforce a settlement agreement if there is a genuinely disputed question of material fact regarding the existence or terms of that agreement" [quoting Malave v. Carney Hosp., 170 F.3d 217, 220 (1st Cir. 1999)]. In this case, the Parties disagree about the significance of the "Memorandum of Settlement." Defendants' Motion, therefore, is DENIED.

The defendants filed a motion for reconsideration seeking enforcement of the settlement agreement or at least an evidentiary

hearing. Following the denial of both requests, the defendants sought to appeal to this court from the refusal to enforce the settlement agreement but the appeal was dismissed for lack of a final appealable order. In due course, the case was set for trial before a magistrate judge on the consent of both parties. 28 U.S.C. § 636(c) (2000); Fed. R. Civ. P. 73. At the ensuing trial Bandera represented herself.

At trial, Bandera testified in detail as to her experience and sought compensatory front and back pay but--apparently to avoid further discovery and delay--made no claim for emotional suffering. She also adduced testimony from a number of witnesses including Nancy Coletta, a female police officer in the Quincy Police Department. Coletta, who had filed then-pending sexual harassment claims of her own against the police department, gave damaging testimony, more fully described below, as to her own experience and her view of Bandera's treatment.

The defense offered testimony from several witnesses including Frane and two other police officials. After two days of deliberation, the jury returned a set of special verdicts addressing, as to each defendant, each theory of recovery urged against that defendant (not every theory was directed against each defendant). The jury rejected all claims made against the mayor and police chief and all claims against the city save for the sexual harassment claims made under Title VII and Chapter 151B.

-7-

The jury also ruled that Bandera had proved no damages as to front or back pay but was entitled to $135,000 in punitive damages.[1]

On this appeal, the city argues--as one would expect-- first that the settlement agreement foreclosed Bandera's claims and, alternatively, that the district court could not refuse enforcement of the agreement without holding an evidentiary hearing. On the facts of record, the latter position is presumptively correct, although the issue is a shade more complicated than the city suggests. At the very least, the district court has not yet supplied an adequate reason for refusing to enforce the agreement.

A formal release would have barred Bandera's claims without more, Restatement (Second) of Contracts § 284 (1981), but Bandera's release could be secured only by enforcement of the settlement agreement. Yet it is conventional for the court before whom the case is pending to enforce a settlement agreement, assuming it is valid, Quint v. A.E. Staley Mfg. Co., 246 F.3d 11, 14 (1st Cir. 2001), cert. denied, 535 U.S. 1023 (2002); it would generally be preposterous to conduct a trial in the teeth of a

---

[1]In response to post-trial motions by the city, the district court ruled that–given the instructions–the award of punitive damages given in the absence of compensatory damages had implicitly been premised on Chapter 151B which (the court held) permits such an award. Bandera v. City of Quincy, 220 F. Supp. 2d 26, 29-31 (D. Mass. 2002). Compare Kerr-Selgas v. Am. Airlines, Inc., 69 F.3d 1205, 1214-15 (1st Cir. 1995); see also Provencher v. CVS Pharmacy, Div. of Melville Corp., 145 F.3d 5, 11 (1st Cir. 1998). No appeal as to this ruling has been taken.

valid settlement agreement and award damages-only to have the resulting judgment unwound by a contract action or similar remedy implementing the settlement agreement.

Does a judge nevertheless have residual authority to refuse to enforce a settlement agreement that is otherwise a valid contract?  It is hard to foresee all possible circumstances, but of this we are sure: a judge cannot refuse to enforce an otherwise valid settlement agreement on the ground initially given in this case, namely, that doing so would require the judge to conduct a mini-trial into the question whether a binding contract had been made.  Contract enforcement is not normally a matter of judicial convenience.

The district judge was moved by Bandera's desire to have her day in court.  But settlement agreements, if valid and not against public policy, are voluntary surrenders of the right to have one's day in court. Conceivably, a settlement agreement might (rarely) be invalid as against public policy, e.g., EEOC v. Astra USA, Inc., 94 F.3d 738, 744-45 (1st Cir. 1996), but there is no evident public policy objection to the settlement of Bandera's claim--if the contract is a valid one.  Nor, on this assumption, is there any evident equitable reason to deny specific performance of the contract.

This brings us to the issue of validity.  The district court was assuredly correct in saying that in general "'a trial

-9-

court may not summarily enforce a settlement agreement'" if material facts are in dispute as to the validity or terms of the agreement, Malave v. Carney Hosp., 170 F.3d 217, 220 (1st Cir. 1999). But by the same token the district court cannot summarily deny enforcement simply because material facts are in dispute: the task is to resolve the dispute. And, in this instance, it is unlikely--though perhaps not impossible--that the matter could be resolved without an evidentiary hearing.

The two most obvious issues of fact are whether--as Bandera claims--she was improperly coerced into signing the agreement and whether--as she also claims--there was a contemporaneous side agreement that the contract would be renegotiated in her favor after the election. Of course, such issues are surrounded by legal questions (e.g., when can a party claim coercion by her own attorney as a defense vis-à-vis a third party; does the parol evidence rule bar the showing of a side agreement); but one might need more facts, as well as briefing, even to address such issues.

Further, although Bandera's asserted subjective beliefs regarding the settlement likely do not bar enforcement (absent coercion or a valid side agreement), conceivably she might argue that some of the terms of the agreement are too indefinite to support a valid agreement or that Sheets' defeat in the election frustrated the purpose of the agreement. Neither of these

-10-

arguments seems especially promising but both have been hinted at. That the signed document contemplated a second more complete written agreement would not by itself automatically preclude treating the former as a binding contract.[2]

This brings us to the defendants' second attack on the judgment which concerns alleged errors at trial. We address these claims now for a very obvious reason: although they would be mooted by a decision upholding the settlement agreement, the possibility exists that the settlement agreement will not prove a valid bar to the judgment. If so, it would be time wasting to have a second appeal to consider claims of trial error which are at this time fully briefed and equally legitimate challenges to the judgment.

Both of the claims of trial error center around the testimony of Nancy Coletta, the City of Quincy police officer called by Bandera. Prior to trial, when Coletta was identified as a witness for Bandera, defendants anticipated that Coletta among others would be asked to describe her own experiences with the police and thus moved in limine for an order limiting or excluding such testimony on the ground that it was irrelevant or, if

---

[2]An agreement to make a further more detailed agreement could in some instances not be intended as a binding contract, or might be too indefinite; but neither is necessarily or even ordinarily so. Bacou Dalloz USA v. Continental Polymers, Inc., __ F.3d __ (1st Cir. 2003); Ysiem Corp. v. Commercial Net Lease Realty, Inc., 328 F.32 20, 23 (1st Cir. 2003); Quint, 246 F.3d at 15; Farnsworth on Contracts § 3.8 (2d ed. 1998).

-11-

relevant, unduly prejudicial under Federal Rule of Evidence 403. The district judge denied the motion without discussion.

At trial Coletta gave testimony of two different types. Primarily, she described the harassment to which she herself had been subject; these episodes included name-calling, exposure to offensive conversations about sexual matters and to pornographic magazines, hostile treatment, and her reporting of these incidents to Frane. She testified that she had suffered major depression as a result of this behavior.

In addition, Coletta was allowed to testify over objections by the defense as to how Coletta felt about, and assessed, Bandera's own allegations. In particular, Coletta testified:

- that after reading about Bandera's claims she (Coletta) had told another officer "how I felt that it was unfair and how I didn't feel that they were giving you [Bandera] a chance to show your potential, just like they hadn't done to me. And that it's the old-boy network";

- that she (Coletta) had told another officer that she thought that Bandera's "potential had been squashed by the men in the department"; and

- that she had told Bandera that she (Coletta) had been placed on administrative leave due to job stress and told her further that Bandera "had suffered from the same stuff . . . ."

On appeal, the city says that Coletta's testimony was of minimal relevance but highly prejudicial, see Fed. R. Evid. 403, that Coletta had no first hand knowledge of what happened to Bandera and her views constituted inappropriate opinion testimony by a lay witness, Fed. R. Evid. 701, and that the testimony as to what Coletta said to other officers or Bandera was inadmissible hearsay, Fed. R. Evid. 801. We consider separately the two phases of Coletta's testimony.

Coletta's recitation of her own experiences was relevant. The most obvious relevance of Coletta's testimony–that she had suffered similar harassment and reported it to Frane–was to show liability on the part of supervisory officers such as Frane and also on the city for a pattern of knowing toleration of harassment by its subordinates. See, e.g., Hirase-Doi v. U.S. West Communications, Inc., 61 F.3d 777, 782-84 (10th Cir. 1995). Whether it might also be relevant for other purposes does not matter here, and we take no position on the issue. Compare id..

How far Coletta's testimony tended to achieve these ends in the present case might or might not be debatable but it is simply not discussed by defendants. They make only a generic objection that the experience of other female officers is inherently remote and, where (as here) graphic, inherently more prejudicial than probative. We assume that such a generic objection is properly preserved, having been made and ruled on at

-13-

pretrial, <u>Crowe</u> v. <u>Bolduc</u>, 334 F.3d 124, 133 (1st Cir. 2003); but expressed in abstract terms-which is all we have-it is unsound and was properly rejected.

Coletta's testimony as to her own assessment of Bandera's experience is quite a different matter. In form it was hearsay-testimony of what the witness said to another outside of court and offered for the truth of those out of court statements-but that is not its main vice. Coletta, after all, was there to be examined; and her statements would have had about the same force if she had simply given her naked present assessment of Bandera's situation instead of describing her earlier, out of court assessments.

The real problem is that, so far as it appears, Coletta had no actual knowledge of what had happened to Bandera, and her assessments of what Bandera reported to have happened and the psychological impact on Bandera were wholly inappropriate opinion testimony. Fed. R. Evid. 701; <u>Lynch</u> v. <u>City of Boston</u>, 180 F.3d 1, 16-17 (1st Cir. 1999). Coletta was not qualified as an expert on anything and her assessments were not the limited kind of opinion testimony deemed helpful to a jury (<u>e.g.</u>, an estimate of car speed or whether a defendant was intoxicated) but simply jury argument offered from the witness stand. The testimony should certainly not have been admitted.

If the basic objection-improper opinion testimony by a lay witness-had been preserved, we might be tempted to reverse. Quite possibly this phase of the testimony had fairly limited impact: Coletta's assessment of Bandera's situation was nothing like so graphic as Coletta's admissible testimony as to her own experience; her opinions as to Bandera's experience were mildly phrased; and the jury was far more likely to base its judgment on Bandera's own detailed recitation of what had happened to her. Still, whether the testimony's admission could be described safely as harmless error is open to doubt.

But the objection was not in our view properly preserved. Admittedly, the newly amended Federal Rules of Evidence sensibly provide that an objection resolved by a definitive in limine ruling admitting evidence need not be renewed at trial. F. R. Evid. 103(a) (2000). But if the district judge ruled definitively on anything, it was that Coletta and similar witnesses could testify about their own experience and not that they could assess that of Bandera. This is evident from the in limine motion itself.

Then at trial when the opinion testimony was offered, defense counsel said "objection" on several occasions; but few of the objections were explained and the ones that were had to do with time frame. Given earlier general attacks on Coletta's testimony based on relevance and prejudice, we do not think that it was at all necessarily obvious to the magistrate judge that the new

-15-

objections were to impermissible lay witness opinion. This is especially so because several of the objections were specifically about time frame.

The law is clear that an objection, if its basis is not obvious, is not preserved unless the ground is stated. Fed. R. Evid. 103(a)(1); United States v. Carrillo-Figueroa, 34 F.3d 33, 39 (1st Cir. 1994). This case is a perfect illustration of why that rule is a sound one. Coletta's opinion testimony, although clearly inappropriate, was at the tag end of other testimony to which different objections had been litigated pretrial. If counsel had explained why this new testimony differed and was in no way covered by the district court's in limine ruling, there is a good chance that the magistrate judge would have excluded it. See Freeman v. Package Mach. Co., 865 F.2d 1331, 1337-38 (1st Cir. 1988).[3]

This is not a criticism of counsel. Trials are a rough and ready business; snap judgments as to unexpected testimony have to be made all the time. However, the failure to preserve the objection means review is at most for plain error. Fed. R. Evid.

---

[3]Although the point is not mentioned by defendants, the magistrate judge may have borne some of the responsibility for this omission because she told the lawyers that in general they should simply object and she would hold a bench conference if the basis for the objection was unclear. This may have been an unwise direction, United States v. Gomes, 177 F.3d 76, 80 (1st Cir. 1999), but in any case she readily allowed counsel to approach the bench to spell out objections and defense counsel could easily have explained at the bench how the opinion testimony differed from Coletta's prior testimony about her own experience and why it was objectionable. Id.

103(d). As we have noted, it is far from clear that the opinion testimony was harmful. This doubt alone is enough to bar reversal under the plain error doctrine: although the error is plain in retrospect, there is no showing that it probably infected the outcome or caused a miscarriage of justice. United States v. Olano, 507 U.S. 725, 736 (1993); Danco, Inc. v. Wal-Mart Stores, Inc., 178 F.3d 8, 15 (1st Cir. 1999).

To sum up, the judgment must be set aside by the district court if in further proceedings it is determined that a valid settlement agreement was established requiring a release of Bandera's claims in exchange for what was promised in the agreement. But if the settlement agreement proves in further proceedings not to be a bar, then the judgment stands. The prospect of such further proceedings and a further appeal from their outcome might suggest that compromise of some kind remains in the parties' best interests.

The judgment of the district court is stayed pending further order of the district court following the further proceedings now ordered, and this matter is remanded to the district court for proceedings consistent with this decision.

It is so ordered.