IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| THOMAS RICKETTS, | : | |
| | : | |
| Plaintiff, | : | C.A. No. K19C-02-014 JJC |
| | : | In and for Kent County |
| v. | : | |
| | : | |
| CHRISTOPHER MYERS, | : | |
| | : | |
| | : | |
| Defendant. | : | |
| | : | |

**MEMORANDUM OPINION AND ORDER**

Submitted: April 20, 2020
Decided:  June 9, 2020

*Defendant's Motion for Summary Judgment – GRANTED*

Edward C. Gill, Esquire, Law Office of Edward C. Gill, P.A., Georgetown, Delaware, *Attorney for Plaintiff.*

Shae Chasanov, Esquire, Swartz Campbell LLC, Wilmington, Delaware, *Attorney for Defendant.*

**Clark, J.**

Defendant Christopher Myers moves for summary judgment against Plaintiff Thomas Ricketts.  In his motion, he argues that Mr. Ricketts released his personal injury claim for $1,000.  Mr. Ricketts opposes the motion; he argues that there is a genuine issue of material fact regarding whether a mutual mistake precludes summary judgment.  For the reasons discussed below, Mr. Ricketts identifies no genuine issue of material fact that supports a reasonable inference that a mutual mistake made the settlement agreement unenforceable.  Accordingly, summary judgment on behalf of Mr. Myers is necessary.

## I.    Facts of Record

The facts are those of record, viewed in the light most favorable to Mr. Ricketts, the non-movant.  On November 27, 2017, Mr. Myers backed his car into Mr. Ricketts' parked car.  Mr. Myers received a ticket for, and pled guilty to, improper backing.[1]  No ambulance responded to the scene; nor did Mr. Ricketts request immediate medical assistance.[2]  On November 29, 2017, however, he went to the emergency room.[3]

Approximately one week later, on December 4, 2017, GEICO adjuster Jerry Penfield called Mr. Ricketts. Mr. Penfield recorded the phone call in two segments.[4] The first recorded segment took place from 11:38 a.m. to 11:46 a.m..  The second segment took place from 11:56 a.m. to 11:59 a.m...[5]  In the first segment, they discussed the accident, Mr. Ricketts's injuries, and his medical treatment to date.[6] At that time, Mr. Ricketts told the adjuster that he injured his neck and shoulder and had headaches.  He also told the adjuster he received x-rays in the emergency room

---

[1] Pl. Ex. A.
[2] Def. Ex. B at 19:23–20:3.
[3] *Id.* at 21:1–5.
[4] Def. Ex. C.
[5] *Id.*
[6] *Id.* at 1–5.

and that they showed no evidence of injury. Finally, he told him that an emergency room provider instructed him to make an appointment with his primary care doctor within a week.[7] On the day of the settlement, he had scheduled the primary care visit but had not yet attended it.[8]

Mr. Penfield testified at his deposition that Mr. Ricketts resolved his claim during the unrecorded portion of their call.[9] During that portion, Mr. Ricketts rejected GEICO's first offer of $750 and then agreed to accept $1,000.[10] At that point, Mr. Penfield again recorded the conversation. The second recording memorialized the agreement that Mr. Ricketts intended to release all present and future claims in exchange for $1,000.[11] In the recording, Mr. Ricketts confirmed that he understood the questions asked of him and that he intended to resolve the matter.[12] Later at his deposition, he confirmed that he did not tell Mr. Penfield he was confused or that he had difficulty understanding the terms.[13] Mr. Ricketts now attests in an affidavit, however, that he did not understand that he released all future claims when he accepted the offer.

After the conversation, Mr. Penfield mailed Mr. Ricketts the $1,000 check. The front of the check provided the following: "bodily injury coverage full and final settlement bodily injury claim and all liens known and unknown."[14] Mr. Penfield did not send a written release with the check; it follows that Mr. Ricketts never signed one. After Mr. Ricketts received the check, however, he endorsed it and cashed it. Furthermore, according to Mr. Ricketts's deposition testimony, he did not

---

[7] *Id.*
[8] *Id.*
[9] Pl. Ex. C at 40–42.
[10] Def. Ex. D at 48:21–49:23; 59:9–60:14.
[11] Def. Ex. C at 6–7.
[12] *Id.* at 7.
[13] Def. Ex. B at 34:7–21.
[14] Def. Ex. E.

3

read the full and final release language on the check before he did.[15]   At his deposition, he testified that when looking at a reduced-in-size copy of the check, it was too small for him to read.[16]

After cashing the check, Mr. Ricketts attended his primary care appointment. Again, he had scheduled it *before* he agreed to settle his case and before he cashed the check. The evidence of record supports a reasonable inference that Mr. Ricketts suffered a permanent "muscular ligamentous injury to the cervical spine" as a direct result of the collision. He now sues Mr. Myers for general damages and special damages in excess of those covered by his personal injury protection coverage.[17]

## II.    Parties' Arguments

Mr. Myers seeks summary judgment based on the affirmative defense of release. He argues that there is no factual dispute that Mr. Ricketts released his claims for $1,000. In addition to seeking summary judgment based upon the release term of the settlement, Mr. Myers separately contends that the undisputed facts created an accord and satisfaction.

In response, Mr. Ricketts argues that the settlement agreement is invalid because the parties made a mutual mistake. Namely, he argues that at the time of settlement, neither party knew the extent of Mr. Ricketts's injuries nor the amount of future medical treatment required for them. Given this alleged misunderstanding, he argues that a question of fact remains regarding whether there was a mutual mistake at the time of settlement. Furthermore, he argues that this ignorance likewise precludes an accord and satisfaction defense.

---

[15] Def. Ex. B. at 40:6–10.
[16] *Id.* at 39:22–40:10.
[17] Def. Ex. A. at 4.

Finally, Mr. Ricketts highlights the fact that the claims adjuster did not provide or acquire a written release of claims. He further attests in an affidavit that "he did not understand that accepting the $1,000 would . . . foreclose him from seeking any sort of future compensation."[18]

### III. Summary Judgment Standard

Summary judgment is appropriate only if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[19] The Court must view the evidence in the light most favorable to the non-moving party.[20] The burden of proof is initially on the moving party.[21] However, if the movant meets his or her initial burden, then the burden shifts to the non-moving party to demonstrate the existence of material issues of fact.[22] The non-movant's evidence of material facts in dispute must be sufficient to withstand a motion for judgment as a matter of law and sufficient to support the verdict of a reasonable jury.[23]

### IV. Discussion

At the outset, Mr. Myers meets his initial burden on summary judgment. The record includes a recording of Mr. Ricketts settling his claim for $1,000. In addition, Mr. Myers further manifested his intent to resolve the claim by cashing a check that contained verbiage on its face that confirmed a full and final settlement.

Accordingly, the burden then shifts to Mr. Ricketts to demonstrate a genuine issue of material fact. First, he cites no objective evidence of record that supports a reasonable inference that the settlement was not binding. Second, with regard to Mr.

---

[18] Pl. Ex. D, at ¶ 7.
[19] Super. Ct. Civ. R. 56(c); *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).
[20] *Brozaka v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).
[21] Super. Ct. Civ. R. 56(e); *Moore*, 405 A.2d at 680 (Del. 1979).
[22] *Moore*, 405 A.2d at 681 (citing *Hurtt v. Goleburn*, 330 A.2d 134 (Del. 1974)).
[23] *Lum v. Anderson*, 2004 WL 772074, at *2 (Del. Super. Mar. 10, 2004).

Ricketts's claim of mutual mistake, he in essence claims a defense to Mr. Myers's affirmative defense of release. On this record, Mr. Ricketts also does not demonstrate a genuine issue of material fact with regard to mutual mistake. Because the parties entered a contract and a mutual mistake does not invalidate it, summary judgment is appropriate.

## A. There are no genuine issues of material fact regarding Mr. Ricketts's release of claims.

Courts favor settlements and treat them as any other contract.[24] A binding contract requires a mutual manifestation of assent.[25] Likewise, when evaluating a settlement that releases claims, courts consider the intent of the parties based upon the objective evidence of record. A settlement agreement includes a voluntary surrender of a plaintiff's right to pursue his or her claim in court.[26] Generally, where a settlement check following an agreement "contains clear language indicating the scope and effect of the settlement and the check is cashed, the plaintiff is deemed to have agreed to the settlement terms."[27]

In support of summary judgment, Mr. Myers cites the Superior Court decision in *Greene v. Summers*[28] that addresses the enforceability of a personal injury settlement. As opposed to the case at hand, the insurer in *Greene* sent the plaintiff a check *and* a release. The *Greene* plaintiff cashed the check but never signed the release. As in the case at hand, that check included the following language: "bodily

---

[24] *Crescent/Mach I Partners, L.P. v. Dr. Pepper Bottling Co. of Texas*, 962 A.2d 205, 208 (Del. 2008) (citing *Rowe v. Rowe*, 2002 WL 1271679, at *3 (Del. Ch. May 28, 2002)).
[25] *Barnard v. State*, 642 A.2d 808, 816 (Del. Super. Nov. 17, 1992) (citing John D. Calamari & Joseph M. Perillo, *Contracts*, Section 1–12, (3rd ed. 1987)).
[26] *Greene v. Summers*, 2012 WL 4165648, at *2 (Del. Super. Aug. 24, 2012) (citing *Bandera v. City of Quincy*, 344 F.3d 47, 52 (1st Cir. 2003)).
[27] *Id.* at *2 (citing *Malcolm v. Sears*, 1990 WL 9500, at *3 (Del. Super. Jan. 26, 1990)).
[28] 2012 WL 4165648, at *1.

injury coverage full and final settlement of all claims and liens."[29]  At some later point, she sued the tortfeasor for additional compensation.[30]

Under those facts, the court granted summary judgment, holding that when the plaintiff cashed the check, she "manifested her assent" to the settlement.[31]  The court explained that the plaintiff

> had sufficient notice of the scope and effect of the check, as the front of the check indicated that the check constituted full and final settlement of all claims and liens.  Thus, when the plaintiff cashed the check, she acknowledged settlement and made a manifestation of mutual assent sufficient to render the settlement valid.[32]

Mr. Ricketts fails to distinguish *Greene*.[33]  Moreover, he does not address a central premise of contract law recognized in the *Greene* decision—that courts must evaluate contract formation based upon objective evidence.[34]   Here, Mr. Ricketts provides subjective evidence that he did not understand the nature of the settlement.  In some cases, a party's subjective intent may support an issue of fact regarding contract formation.  To be relevant regarding contract formation, however, such subjective evidence of intent must be objectively reasonable.  In this case, all objective evidence of record points to a binding settlement.

Distinguishing one of the primary cases relied upon by Mr. Ricketts further illustrates the Court's reasoning.   Namely, he relies significantly upon *Hampton v.*

---

[29] *Id.*

[30] *Id.*

[31] *Id.* at *2.

[32] *Id.*

[33] Mr. Ricketts attempts to distinguish the *Greene* decision by arguing that the plaintiff in *Greene* was an attorney, who was held to a higher standard than Mr. Ricketts.  While the *Greene* decision describes the plaintiff in the case's caption as "Esq..."  the recitation of facts in the decision demonstrate that the plaintiff was a minor only a year prior to the court's decision.  She was unlikely to have been a licensed attorney at the time she settled her claim.

[34] *Id.*

*Truman.*[35]  In *Hampton*, the plaintiff was a semi-illiterate, sixty-eight year old man who signed a release that the insurance carrier printed on the back of a settlement check.[36]  In the court's decision in *Hampton,* it found a genuine issue of material fact regarding the agreement's enforceability because:

> [t]he release language was situated on the back of the settlement check and there was no separate release document; the plaintiff was elderly and semi-illiterate; plaintiff was not represented by counsel and the release was not explained to the plaintiff; and plaintiff alleged that an oral agreement existed that the settlement payment was for property damage and car rental expenses only.[37]

Given this reasoning, Mr. Ricketts argues that he, as the plaintiff in *Hampton*, never signed a release, possessed low literacy, and had no counsel.  His situation is nevertheless distinguishable.  Namely, the court's decision in *Hampton* turned on the failure of the adjuster to explain the release terms to the plaintiff.  Given such a circumstance, the plaintiff's illiteracy became material.  In this case, Mr. Penfield fully explained the release; he orally confirmed with Mr. Ricketts that it was full, complete, and intended to bar all future claims against Mr. Myers.  In relevant part, the following exchange occurred between the two:

> Q:  All right.  Now the purpose of this recorded conversation is to make record of a bodily injury settlement by Mr. Thomas Ricketts, Jr., for bodily injury resulting from an automobile accident on November 27,2017 . . . is that correct?
> A:  Yes
> Q: All right, Mr. Ricketts, we have agreed to settle your bodily injury claim for $1,000, and settling this bodily injury claim means GEICO will pay to you on behalf of Christopher Myers . . . $1,000, *and with your acceptance you will give up any and all rights to file any law suits or make any further claim for bodily injury against . . . Christopher Myers*.  Do you agree to accept $1,000 in full and final settlement of

---

[35] *Hampton v. Truman,* Del. Super., C.A. No. 944, 1973, Christie, J. (April 8, 1974).  *See also Malcolm*, 1990 WL 9500, at *3 (discussing *Hampton*).
[36] *Malcolm*, 1990 WL 9500, at *3 (discussing *Hampton*).
[37] *Id.*

your bodily injury claim against [Mr. Myers] for the accident of November 27, 2017 and release [him\ from any further liability?
A: Yes, sir.

. . .

Q: Is it your desire to settle this claim as discussed and release [Mr. Myers]?
A: Yes

. . .

Q: All right. Have you understood all these questions?
A: Yes, sir. [38]

After this explanation and exchange of mutual promises, Mr. Ricketts orally manifested his assent. At that point, they settled the matter. In addition, all further objective evidence of record confirms the binding settlement. Namely, Mr. Ricketts cashed the $1,000 check. GEICO confirmed in writing on that check that the settlement was full and final. If Mr. Ricketts could not read it, he should have reasonably asked someone what it said. On balance, when considering the objective evidence in the light most favorable to Mr. Ricketts, no reasonable jury could conclude that he did anything other than release his claims. As a result, summary judgment is appropriate unless a mutual mistake rendered the agreement voidable.[39]

## B. Mr. Ricketts identifies no genuine issue of material fact regarding an alleged mutual mistake.

Because the parties agreed to settle the matter, the Court must now consider whether Mr. Ricketts demonstrates a triable issue of fact regarding the release's enforceability. Delaware courts generally uphold a release unless it is the product of fraud, coercion, duress, or mutual mistake.[40]

---

[38] Def. Ex. C., at 7 (emphasis added).
[39] *Reason v. Lewis*, 260 A.2d 708, 709 (Del. 1969) (explaining a "finding of . . . mutual mistake requires a ruling that the [a] release may be avoided").
[40] *Hicks v. Sparks*, 89 A.3d 476, 2014 WL 1233698, at *2 (Del. 2014) (TABLE).

9

In order "[t]o establish a mutual mistake of fact, the plaintiff must show . . . that (1) both parties were mistaken as to a basic assumption, (2) the mistake materially affects the agreed-upon exchange of performances, and (3) the party adversely affected did not assume the risk of the mistake."[41] This case turns on the first element. When evaluating it, the mutual mistake "must relate to a past or present fact material to the contract and not to an opinion respecting future conditions as a result of present facts."[42]

In the personal injury settlement context, where the extent of injuries are at issue, a mutual mistake "exists only where neither the claimant nor the insurance carrier is aware of the existence of personal injuries."[43] Namely, releases are invalid where both parties are mistaken as to the presence of the plaintiff's injuries at the time they executed the release.[44] In other words, courts should consider whether the plaintiff's present condition was a known condition at the time he or she executed the release.[45]

In this case, there was not a separate written release. Nevertheless, the same standard applies when evaluating the impact of an alleged mutual mistake on a settlement agreement. Settlements (1) where there is a signed written release and (2) where there is no signed written release are both contracts. Whether there was a written release or not, the focus as to the first element must be on the parties' knowledge regarding the injury. If the plaintiff knew that "an indicia of injuries exist[ed]" when he or she settled, there was no mutual mistake.[46] Even though the

---

[41] *Id.*

[42] *Id.* (citing *Alvarez v. Castellon*, 55 A.3d 353, 354 (Del. 2012)).

[43] *Id.*

[44] *Id.* (citing *Reason v. Lewis*, 260 A.2d 708, 709 (Del. 1969) and *Hicks v. Doremus*, 1990 WL 9542, at *2 (Del. Super. Jan. 8, 1990)).

[45] *Webb v. Dickerson*, 2002 WL 388121, at *3 (Del. Super. Mar. 11, 2002)

[46] *Id.* (citing *Hicks*, 1990 WL 9542, at *2).

plaintiff might be unaware of the exact degree of injuries, knowledge of the existence of *an* injury precludes such a finding.[47]

On this record, Mr. Ricketts demonstrates no factual dispute regarding the first element of mutual mistake. He undisputedly knew his neck, shoulder, and head hurt at the time he settled the matter. On the other side of the negotiation, Mr. Penfield learned that directly from Mr. Ricketts. Their conversation also confirmed that, at the time of settlement, both knew that Mr. Ricketts needed further treatment (and had scheduled it). As a result, they both recognized indicia of injury before settlement. In his suit, Mr. Ricketts seeks compensation for the same body part that he told the adjuster he had injured. It follows that they were not mistaken as to a basic assumption. It further follows that because there is no evidence supporting a reasonable inference that Mr. Ricketts meets the first element of a mutual mistake, there was no mutual mistake as a matter of law.

Mr. Ricketts cites the decisions in *Reason v. Lewis*[48] and *Webb v. Dickerson*[49] to suggest that a mutual mistake concerning the existence and extent of a plaintiff's injuries prevents a valid settlement.[50] Both cases are distinguishable.

First, in the *Reason* matter, the parties did not know that the plaintiff had suffered *any* injury at the time they settled.[51] Rather, both the plaintiff and claims adjuster believed that the plaintiff was not hurt and required no treatment. The plaintiff did not discover his injury until after the settlement.[52] Here, Mr. Ricketts's pre-settlement knowledge of a neck injury with pending medical treatment distinguishes his case from the *Reason* decision.

---

[47] *Id.*
[48] 260 A.2d 708 (Del. 1969).
[49] 2002 WL 388121 (Del. Super. Mar. 11, 2002).
[50] Pl. Resp. at 5, ¶ 14.
[51] *Reason*, 260 A.2d at 709.
[52] *Id.*.

11

Second, in the *Webb* decision, the court focused on the adjuster's conduct. Namely, the adjuster approached the plaintiff at a salvage yard within twenty-four hours of the accident.[53] They spoke for approximately fifteen minutes but the adjuster did not discuss the plaintiff's condition, diagnosis, or treatment.[54] Furthermore, the adjuster in the *Webb* case said nothing to the plaintiff about the settlement's effect on the plaintiff's future claims.[55] In the case at hand, a digital recording confirms that Mr. Ricketts and Mr. Penfield discussed Mr. Ricketts's physical condition. Likewise, Mr. Penfield undisputedly told Mr. Ricketts that the settlement would release all claims.

The Delaware Supreme Court's analysis in *Hicks v. Sparks* is particularly on point, although that case involved a written release as opposed to an oral settlement consummated by a cashed check. In the *Hicks* decision, the Court reviewed a case where a plaintiff told her claims adjuster that she was experiencing pain and headaches at the time she executed a release.[56] The Supreme Court explained that

> [a]lthough [the plaintiff] may have been mistaken as to the future effect of her injury, both parties were aware that [she] injured her neck in the accident. This can reasonably be considered an "indicia of injuries" existing at the time of the Release. [The plaintiff] had ample opportunity to consult additional physicians and obtain further diagnoses to discover the herniated disc. Her later diagnosis is not a materially different fact but an injury of which [the plaintiff] and [the claims adjuster] had some awareness. Therefore, there was no mutual mistake.[57]

In the present case, no reasonable jury could find there to be a mutual mistake regarding the parties' knowledge that Mr. Ricketts had a neck injury at the time of settlement. He now seeks compensation for injuries to that same body-part.

---

[53] *Webb*, 2002 WL 388121, at *2.
[54] *Id.*
[55] *Id.*
[56] *Sparks*, 2014 WL 1233698, at *3.
[57] *Id.*

Because the facts of record could not permit a reasonable trier of fact to find that both parties were mistaken as to a basic assumption, it follows that there was no mutual mistake as a matter of law. As a further result, the Court need not address whether accord and satisfaction would separately bar this personal injury claim.

## V.     Conclusion

The settlement agreement between Mr. Ricketts and Mr. Penfield as Mr. Myers's agent is a valid and binding contract. Summary judgment on behalf of Defendant Christopher Myers must be **GRANTED**.

**IT IS SO ORDERED.**


<u>/s/ Jeffrey J Clark</u>
Judge